[Nos. 53482–9, 53574–4.   En Banc.   October 8, 1987.]

THE STATE OF WASHINGTON, *Petitioner,* v. JAMES T. DUNAWAY, *Respondent.*

THE STATE OF WASHINGTON, *Petitioner,* v. RAYMOND PATRICK GREEN, *Respondent.*

THE STATE OF WASHINGTON, *Petitioner,* v. JOHN CLARENCE FRANKLIN, *Respondent.*

Seth R. Dawson, Prosecuting Attorney for Snohomish County, and Seth Aaron Fine, Deputy; Donald C. Brockett, Prosecuting Attorney for Spokane County, and Clark D. Colwell, Deputy, for petitioner.

Richard L. Cease, Public Defender, and Jim Kane, Assistant, for respondent Green.

Frank Conklin, Special Public Defender, for respondent Franklin.

DURHAM, J.—These three cases involve interpretation of the Sentencing Reform Act of 1981 (SRA) relating to the calculation of a defendant's standard sentence range. One of the factors in that calculation is the defendant's offender score, which measures the length and severity of his criminal history. The SRA, RCW 9.94A, provides that separate crimes encompassing "the same criminal conduct" must be treated as one crime in determining criminal history. RCW 9.94A.400(1)(a). The cases currently before this court present a variety of factual settings to which this statute must be applied. In both Green and Franklin, the defendants committed armed robbery and attempted to murder their victims. At issue in both of these cases is if the armed robbery and the attempted murder encompassed the same criminal conduct. In Dunaway, the defendant kidnapped two women in order to rob them. At issue is if the two rob-

beries and the two kidnappings all encompassed the same criminal conduct. The Court of Appeals held in all three cases that the separate crimes did encompass the same criminal conduct and, therefore, that they should be treated as one crime for sentencing purposes. We reverse the Court of Appeals in each instance.

### State v. Green

Between 3 and 3:30 a.m. on August 13, 1984, Raymond Patrick Green entered a Winchell's Donut Shop in Spokane. Green pointed a gun at the employee and told him to open the cash register. The employee gave Green the money—$31. Green then told the employee to walk to the back of the store. As they were walking, Green hit the employee on the head with his gun, knocking him to the floor. Green then shot him once in the back. According to the employee's testimony, Green started to leave, and as he began walking around the corner the employee yelled for help. Green returned and again shot the employee in the back.[1] Green then ran out of the store.

A jury convicted Green of first degree robbery and attempted first degree murder. The sentencing judge concluded that these two crimes did not encompass the same criminal conduct, and accordingly used each of the crimes as criminal history in arriving at the other crime's standard range. This generated a standard range of 203.25 to 270.75 months[2] for the attempted first degree murder charge. The trial judge then imposed an exceptional sentence of 480 months, doubling the standard range. Green also received a concurrent 50-month sentence on the robbery charge.

The Court of Appeals reversed the sentence, holding that the robbery and the attempted murder constituted the

---

[1]Green testified that he did not leave the room between the time when the two shots were fired. However, the sentencing judge found that there was a "partial leaving".

[2]This standard range is expressed in fractions of a month because the standard range for an attempted crime is 75 percent of that for the completed crime. RCW 9.94A.410.

same criminal conduct. As to the exceptional sentence, the Court of Appeals instructed the trial court on resentencing to consider recent Supreme Court cases on the SRA. The Court of Appeals also held that the prosecutor's conduct during closing argument was not reversible error. The parties obtained review of all these holdings.

## State v. Franklin

John Clarence Franklin entered a Doerner's Pizza Parlor in Spokane at approximately 4 p.m. on November 20, 1984. The only other person present was an employee behind the counter. Franklin showed her a knife and demanded the money from the cash register—something less than $100. After receiving the money, Franklin told the employee to get on her knees and to place her hands behind her back. Franklin then stabbed her twice in the back. The employee screamed and escaped out a sliding door.

A jury found Franklin guilty of first degree robbery and attempted first degree murder. The sentencing judge concluded that these two crimes did not encompass the same criminal conduct, and accordingly used each of the crimes as criminal history in arriving at the other's standard range. Franklin received concurrent sentences at the high end of the standard ranges, 411 months for the attempted murder and 144 months for the robbery.

The Court of Appeals reversed the sentence, holding that the two crimes encompassed the same criminal conduct. The State obtained review of this decision.

## State v. Dunaway

James T. Dunaway stated in his plea of guilty that he committed the following acts:

> On March 3, 1986, I went to the Alderwood Mall. I got into a car where Ora Buck and Grace Johnson were present. I showed them the gun and, under threat, asked them to drive toward Seattle. I told them to give me the cash that they had on them. I took some money from each. When we got to Seattle, I told one of the women to go inside the Rainier bank in the University District and to get some more money for me. When she did not return

for some time, I told the other Lady to move over and let me drive. We drove to somewhere in Seattle and I got out of the car.

Dunaway pleaded guilty to two counts of first degree kidnapping and two counts of first degree robbery. The sentencing judge found that all four crimes encompassed the same criminal conduct. Accordingly, the standard ranges were 41 to 54 months for each robbery count and 86 to 106 months for each kidnapping count. The court imposed concurrent sentences at the bottom end of the range.

The State appealed the sentence. The commissioner for the Court of Appeals affirmed and the Court of Appeals denied the State's motion to modify his decision. The State then obtained review in this court.

I

Encompassing the Same Criminal Conduct

Under the SRA, the first step in determining the length of a sentence is to calculate the appropriate standard range. Generally, a defendant is to be sentenced within this standard range unless "substantial and compelling reasons" justify a different sentence. Former RCW 9.94A.122(2). The standard range is based on two factors: (1) the severity of the crime for which the defendant is being sentenced ("offense seriousness level") and (2) the length and seriousness of the defendant's criminal history ("offender score"). RCW 9.94A.350–.370. The defendant's offender score is computed from his criminal history, including prior and current convictions. RCW 9.94A.400(1)(a). At issue in the present cases is how related convictions are used in calculating the offender score.

At the time of the sentencings involved in these cases, RCW 9.94A.400(1)(a) explained the analysis of criminal history as follows:

Except as provided in (b) of this subsection [not applicable in the current cases], whenever a person is convicted of two or more offenses, the sentence range for each offense shall be determined by using all other cur-

rent and prior convictions as criminal history. All sentences so determined shall be served concurrently. *Separate crimes encompassing the same criminal conduct shall be counted as one crime in determining criminal history.*

(Italics ours.)[3]

The focus of this opinion concerns the interpretation of the last sentence quoted above. This language was first dealt with in *State v. Edwards*, 45 Wn. App. 378, 380–82, 725 P.2d 442 (1986). There, a passenger in a car pulled a gun on the driver. The driver yelled for help, and a man approached the car to assist but retreated when the passenger waved the gun at him. The passenger was convicted of kidnapping the driver and of assaulting the rescuer. The Court of Appeals held that the kidnapping and the assault encompassed the same criminal conduct.

[W]e find that Edwards' actions encompassed the same criminal conduct. The kidnapping of the supervisor and the assault on the paramedic were intimately related; there was no substantial change in the nature of the criminal objective. The kidnapping was continuing and still in progress at the time the assault occurred. Moreover, the assault was committed in furtherance of the kidnapping.

*State v. Edwards, supra* at 382.

The *Edwards* court based this analysis on cases interpreting the Juvenile Justice Act of 1977 (JJA), RCW 13.40. Under the JJA's calculation of a juvenile's criminal history,

---

[3]Effective July 1, 1986, RCW 9.94A.400(1)(a) was amended to provide as follows:

Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: *Provided, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime.* Sentences imposed under this subsection shall be served concurrently. . . .

(Italics ours.) The interpretation of the new statute should be no different than that of the old, because the key language remains unchanged. This amendment, therefore, does not affect resolution of the instant cases.

separate convictions are treated as one if they arise out of the "same course of conduct". RCW 13.40.020(6)(a). This phrase has been interpreted to mean: "[a] criminal event which is intimately related or connected to another criminal event". *State v. Adcock,* 36 Wn. App. 699, 706, 676 P.2d 1040, *review denied,* 101 Wn.2d 1018 (1984). Another JJA case has held that the necessary intimate relationship between criminal events is met only if there is "no substantial change in the nature of the criminal objective." *State v. Calloway,* 42 Wn. App. 420, 423–24, 711 P.2d 382 (1985). This test is an objective one, not dependent on the juvenile's subjective intent. *Calloway,* at 424; *State v. Hayes,* 46 Wn. App. 684, 687, 732 P.2d 168 (1987); *State v. Huff,* 45 Wn. App. 474, 478, 726 P.2d 41 (1986).

■ Three recent Court of Appeals decisions have followed *Edwards* in using this objective intent analysis in interpreting the SRA's "same criminal conduct" language. *See State v. Boze,* 47 Wn. App. 477, 735 P.2d 696 (1987); *State v. King,* 47 Wn. App. 38, 733 P.2d 568 (1987); *State v. Rienks,* 46 Wn. App. 537, 731 P.2d 1116 (1987). We find this approach persuasive,[4] especially in light of evidence that the Washington State Sentencing Guidelines Commis-

---

[4]By so holding, we decline to adopt the approach advocated by the State. The State argues that this court should interpret "crimes encompassing the same criminal conduct" in the same manner that similar language in the mandatory joinder rule, CrR 4.3(c), has been interpreted. Under that rule, offenses may be joined in one charge if they are "based on the same conduct." In *State v. Bradley,* 38 Wn. App. 597, 599, 687 P.2d 856, *review denied,* 102 Wn.2d 1024 (1984), the court held that "[o]ffenses based on the same conduct are those based upon the same physical act or omission . . ." However, the context of the language in CrR 4.3(c) is far removed from that of the SRA language in question, especially compared to the similarity in context between the SRA language and the JJA language. Both the JJA's and the SRA's language relate to the effect criminal history has on the calculation of standard ranges. RCW 9.94A.400(1)(a), 13.40.020(6)(a). In contrast, the language of CrR 4.3(c) relates to pretrial joinder of offenses. Because the context of statutory language is relevant to its interpretation, we decline to adopt *Bradley's* analysis. *See, e.g., Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 461 n.230 (D.C. Cir. 1976) (the interpretation of "willful" in a statute's criminal provision need not be the same as the interpretation of "willful" in the same statute's civil provision), *cert. denied,* 434 U.S. 1086 (1978).

sion intended this interpretation to be used.[5] Therefore, in deciding if crimes encompassed the same criminal conduct, trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. As it did in *Edwards,* part of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same. *See Edwards,* at 382.

Despite our general endorsement of the *Edwards* approach, we specifically overrule one portion of its holding. The *Edwards* court held that crimes involving two victims could constitute "the same criminal conduct". We disagree. Convictions of crimes involving multiple victims must be treated separately. To hold otherwise would ignore two of the purposes expressed in the SRA: ensuring that punishment is proportionate to the seriousness of the offense, and protecting the public. RCW 9.94A.010(1), (4). As one commentator has noted, "to victimize more than one person clearly constitutes more serious conduct" and, therefore, such crimes should be treated separately. D. Boerner, *Sentencing in Washington* § 5.8(a), at 5–18 (1985). Additionally, treating such crimes separately, thereby lengthening the term of incarceration, will better protect the public by increasing the deterrence of the commission of these crimes. For these reasons, we conclude that crimes involving multiple victims must be treated separately.

We note in passing that the standard for "same criminal conduct" we have adopted today is similar to a recently enacted legislative definition of the same term. In the 1987 session, the Legislature amended RCW 9.94A.400(1)(a) to

---

[5]The Commission explained the "same criminal conduct" language as follows:

"Subsection (1) includes the phrase 'same criminal conduct.' A Washington appellate court, in another context, interpreted this phase [*sic*] to mean: 'A criminal event which is intimately related or connected to another criminal event.' This language comes from *State* v. *Adcock,* 36 Wn. App. 699 (1984) interpreting the juvenile code's phrase 'the same course of conduct.' Also see *State* v. *Erickson,* 22 Wn[.] App. 38, (1978)." Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* § 9.94A.400 comment, at II–40 (1984).

read as follows:

"Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.

Laws of 1987, ch. 456, § 5, p. 1980. This amendment was not effective until July 26, 1987 and, therefore, was not expressly applicable to the present cases unless we give the amendment retroactive effect, which we decline to do.[6]

We now apply these principles to the facts at hand. Green and Franklin each committed armed robbery and then each attempted to murder his victim. The murders were attempted after receiving the money but before leaving the premises. When viewed objectively, the criminal intent in these cases was substantially different: the intent behind robbery is to acquire property while the intent behind attempted murder is to kill someone. RCW 9A.56-.190; RCW 9A.32.030. The defendants have argued that the intent behind the crimes was the same in that the murders were attempted in order to avoid being caught for committing the robberies. However, this argument focuses on the subjective intent of the defendants, while the cases make clear that the test is an objective one. *State v. Huff*, 45 Wn.

---

[6]Generally, subsequent enactments that only clarify an earlier statute can be applied retrospectively. *Johnson v. Morris*, 87 Wn.2d 922, 925, 557 P.2d 1299 (1976); *Marine Power & Equip. Co. v. Human Rights Comm'n Hearing Tribunal*, 39 Wn. App. 609, 614, 694 P.2d 697 (1985). An enactment supplying a definition for an ambiguous term contained in an earlier statute is merely a clarification. Nevertheless, even a clarifying enactment cannot be applied retrospectively when it contravenes a construction placed on the original statute by the judiciary. *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 558, 637 P.2d 652 (1981); *Johnson*, at 925–26; *State v. Taylor*, 47 Wn. App. 118, 123, 734 P.2d 505 (1987). "Any other result would make the legislature a court of last resort." 1A C. Sands, *Statutory Construction* § 27.04 (4th ed. 1985). The Court of Appeals has already construed the SRA's "same criminal conduct" language in a manner that is inconsistent in certain respects with the 1987 statutory definition. *See State v. Edwards*, 45 Wn. App. 378, 725 P.2d 442 (1986). For example, the new definition in RCW 9.94A.400(1)(a) provides that crimes involving separate victims cannot constitute the same criminal conduct, while *Edwards* held that they can. See discussion above. Therefore, we will not apply the 1987 definition to the present cases.

App. 474, 478–79, 726 P.2d 41 (1986); *State v. Edwards*, 45 Wn. App. 378, 382, 725 P.2d 442 (1986); *State v. Calloway*, 42 Wn. App. 420, 424, 711 P.2d 382 (1985). Additionally, neither crime furthered the commission of the other. While the attempted murders may have been committed in an effort to escape the consequences of the robberies, they in no way furthered the ultimate goal of the robberies. Clearly, the robberies did not further the attempted murders. Accordingly, we hold that these crimes did not encompass the same criminal conduct.

Turning to the Dunaway case, we have already determined that crimes involving two victims constitute two separate incidents of criminal conduct. We need only decide if Dunaway's kidnapping and robbery of a single victim encompassed the same criminal conduct.

Analysis of the *Edwards* factors shows that Dunaway's kidnapping and robbery were intimately related. First, his objective remained the same with respect to each crime. Dunaway pleaded guilty to the charge of intentionally abducting his victim with the intent to commit robbery. Indeed, it was Dunaway's very intent to commit robbery that enabled the prosecutor to raise the charge from second degree to first degree kidnapping. RCW 9A.40.020(1)(b); RCW 9A.40.030. Therefore, robbery was the objective intent behind both crimes. As to the other two factors, it is evident that the kidnapping furthered the robbery and that the crimes were committed at the same time and place. Therefore, the kidnapping and robbery of a single victim should be treated as one crime for sentencing purposes.

For the foregoing reasons, we reverse all three Court of Appeals opinions. In Dunaway, we remand for recalculation of the standard range with the defendant's four current offenses being treated as two separate crimes. In *Franklin*, the sentencing judge correctly calculated the standard range, so we reinstate the sentence imposed there. In *Green*, the sentencing judge correctly calculated the standard range, but then imposed an exceptional sentence, *i.e.*, one outside the standard range. We now turn to analysis of

that issue.

## II
### EXCEPTIONAL SENTENCE

The trial judge sentenced Green to 480 months on the attempted murder count, even though Green's standard range was only 203.25 to 270.75 months. In order to impose a sentence outside the standard range, the sentencing judge must find that "substantial and compelling reasons" justify such an exceptional sentence. RCW 9.94A.120(2). The sentencing judge listed the following three reasons as justifying Green's exceptional sentence:

> The [1] planning and [2] sophistication, and [3] the manifest cruelty to the victim by the defendant shooting the victim once and leaving only to return and shoot him again after a cry for help are aggravating circumstances and the sentencing range does not provide adequate protection for society.

Under RCW 9.94A.210(4), an appellate court is to analyze the appropriateness of an exceptional sentence by addressing the following three questions under the indicated standards of review: (1) Are the reasons supported by evidence in the record? The standard of review is "clearly erroneous". *State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986). (2) Do the reasons justify a departure from the standard range? The standard of review is "matter of law". *Nordby,* at 518. (3) Is the sentence clearly excessive? The standard of review is "abuse of discretion". *State v. Oxborrow,* 106 Wn.2d 525, 532, 723 P.2d 1123 (1986).

Planning. A reason offered to justify an exceptional sentence is sufficient only if it "take[s] into account factors other than those which are necessarily considered in computing the presumptive range for the offense." *Nordby,* at 518. Because planning is already included in the premeditation element of attempted first degree murder, it has already been considered and does not justify an exceptional sentence.

Sophistication. This reason does not justify imposing

an exceptional sentence. To constitute justification, the sophistication must be "'of a kind not usually associated with the commission of the offense[s] in question.'" *State v. Payne,* 45 Wn. App. 528, 531, 726 P.2d 997 (1986) (quoting *State v. Schantzen,* 308 N.W.2d 484, 487 (Minn. 1981)).[7] None of Green's acts evince the elevated degree of sophistication necessary to justify an exceptional sentence.

◼ Cruelty/Multiple Incidents. This reason combines two factors that the SRA recognizes as aggravating circumstances. Statutory aggravating factors include both deliberate cruelty and the commission of multiple incidents per victim. RCW 9.94A.390. Although the statute discusses "multiple incidents" only in the context of major economic offenses, this court has held that they can justify an exceptional sentence even in other contexts. In *State v. Armstrong,* 106 Wn.2d 547, 723 P.2d 1111 (1986), we held that multiple incidents can be used as an aggravating factor when a defendant inflicts multiple injuries in the course of a second degree assault. *Armstrong,* at 550. Under a similar analysis, multiple incidents can be used to justify Green's exceptional sentence. Green shot the victim, partially left the room, and returned to shoot him again, thereby inflicting multiple injuries during the course of attempting first degree murder. These same acts also support a finding that Green acted with deliberate cruelty. Therefore, the trial judge's final reason justifies an exceptional sentence.

◼ Because we have invalidated two of the three reasons used by the trial judge in justifying the exceptional sentence, we must decide whether to affirm the sentence or to remand for the trial judge to reconsider the sentence. Although this court has not yet remanded for resentencing when we have invalidated some of the reasons used to justify an exceptional sentence, we have noted that remand could be warranted in the appropriate case. *State v. Fisher,* 108 Wn.2d 419, 430 n.7, 739 P.2d 683 (1987). We conclude

---

[7]Although *State v. Payne* dealt with the aggravating factor of deliberate cruelty, its reasoning applies equally in the context of sophistication.

that remand is appropriate in the instant case in light of the great disparity, some 20 years, between the sentence imposed and the midpoint of the standard range. This difference is simply too great for this court to assume that the trial judge would still impose the same sentence if he were to consider only the single justifiable reason. Therefore, we remand the sentencing back to the trial court for reconsideration.

## III
### PROSECUTORIAL CONDUCT

One remaining issue in *Green* needs to be addressed. Green argues that the prosecutor's closing argument to the jury constituted misconduct justifying retrial.[8] The prosecutor concluded his closing argument by describing in the following manner Green's acts in shooting his victim:

> This man stood over him, cocked this gun and pulled the trigger. *That's not right. That's not right.* That's not an assault when you shoot him in the back, and he's on his stomach minding his own business at a place where he works. *That's not right. You can't do that.* And it certainly isn't right to turn around and walk away, and because he screams for help you come back and shoot him again.
>
> Ladies and gentlemen, the defendant is guilty of attempted first degree premeditated murder.

(Italics ours.)

Additionally, Green contends in this appeal that the prosecutor wept while making these statements. However, this characterization of the prosecutor's emotional display differs considerably from the way in which Green described it to the trial judge. In arguing that Green should be granted a new trial, defense counsel stated to the trial judge that the prosecutor uttered his concluding remarks "with a tearful quiver in his voice". We will not allow counsel to now recharacterize these facts on appeal. Furthermore, matters referred to in an appellate brief but not included in

---

[8]Different counsel represented the State on appeal.

the record cannot be considered on appeal. *State v. Stockton,* 97 Wn.2d 528, 530, 647 P.2d 21 (1982); *State v. Siderits,* 17 Wn. App. 56, 60, 561 P.2d 231 (1977). We, therefore, confine ourselves to the characterization of events presented to the trial judge.

■ If defense counsel does not object, move for mistrial, or request a curative instruction, then a prosecutor's allegedly improper argument cannot be urged as error on appeal "unless the comments constitute prosecutorial misconduct so flagrant and ill intentioned that no curative instruction could have obviated the prejudice they engendered." *State v. Kendrick,* 47 Wn. App. 620, 638, 736 P.2d 1079 (1987); *see also State v. Guzman–Cuellar,* 47 Wn. App. 326, 338, 734 P.2d 966 (1987); *State v. Hamilton,* 47 Wn. App. 15, 18, 733 P.2d 580 (1987).

Green did not object at trial to the prosecutor's conduct. He argues, however, that he had no chance to object. Green points out that the comments in question were made at the close of the prosecutor's rebuttal argument, just prior to the jury's retirement for deliberations. We conclude, however, that counsel had a sufficient opportunity to make his objections. The record shows that after the prosecutor finished his argument, the jury remained in the courtroom while an alternate juror was dismissed and the bailiff was sworn in. Defense counsel could have objected during this interval, could have moved for mistrial when the jury retired to deliberate, or could have requested a curative instruction. He took none of these steps and, in fact, did not challenge these remarks until 5 days later, when he moved for a new trial. Any prejudice resulting from the prosecutor's comments and the "tearful quiver in his voice" could have been cured with an instruction to the jury. Under these circumstances, appellate review is precluded.

In conclusion, we reverse the Court of Appeals in all three cases with respect to the "same criminal conduct" issue. In *Green,* we also reject the defendant's arguments about prosecutorial misconduct, but we remand for recon-

sideration of the length of Green's exceptional sentence.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

Reconsideration denied March 7, 1988.