[No. 10736-1-III. Division Three. October 3, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN LEE SODERQUIST, *Appellant*.

---

*Bevan J. Maxey* and *Maxey Law Offices P.S.*, for appellant.

*Donald C. Brockett, Prosecuting Attorney*, and *John F. Driscoll, Deputy*, for respondent.

THOMPSON, J. — John Lee Soderquist appeals his jury conviction for attempted second degree rape. RCW 9A.44-

.050(1)(a).[1] He challenges the sufficiency of the evidence to support the "forcible compulsion" element of the charge. He also contends the court considered improper factors in imposing the exceptional sentence. We affirm.

Mr. Soderquist was employed as a licensed practical nurse at Eastern State Hospital. He worked the night shift in Pod B, in which the residents require total care because of age or extensive disabilities. James Walker, a mental health technician, worked the night shift with Mr. Soderquist.

On August 31, 1988, Mr. Walker returned to the ward after making some photocopies. Mr. Soderquist was not at the nurse's station. Mr. Walker went to check one of the patients, and as he approached the room of Peggy Smith, he heard her moaning, "kind of a distress sound". Ms. Smith was a young woman who was in the advanced stages of Huntington's chorea, a neurological disease which is terminal and which produces dementia and affects the patient's muscle control and ability to communicate. She could walk with assistance, and she could nod and shake her head. While she could not speak, she could communicate her emotional state to the staff.

Mr. Walker testified that he entered Ms. Smith's room and saw her with her back against the headboard of the bed and her nightgown pulled up over her abdomen. Mr. Soderquist was hunched over Ms. Smith with one foot on the bed between Ms. Smith's legs. Mr. Walker described Ms. Smith's face:

> [I]t was — fearful. I mean — I have seen her before. But I mean this was — more so than I have ever seen her, really just distressed, . . . scared. I mean, her eyes were wide open.

Mr. Walker stated Ms. Smith had her hands next to her hips, "[k]ind of lifting".

---

[1] RCW 9A.44.050(1)(a) provides:

"A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person:

"(a) By forcible compulsion;"

Mr. Walker testified that he could see Mr. Soderquist's buttocks. Mr. Soderquist turned around. His face was "blood red". The two men stared at each other for a moment, then Mr. Walker left the room. When Mr. Soderquist came back to the nurse's station a few minutes later, he asked Mr. Walker if he was going to turn him in. Mr. Soderquist then stated: "[S]he wanted it . . . She was willing. . . . No one was hurt. I didn't even have an erection."

Mr. Walker reported the incident at the end of the shift. A doctor who examined Ms. Smith the next day found no bruising or other evidence of assault.

Mr. Soderquist was convicted of second degree attempted rape on January 24, 1990. The standard sentence range for this crime is 15.75 to 20.25 months. The court found the following aggravating factors:

> A. Violation of a Position of Trust
> The defendant was employed as a Mental Health Technician at Eastern State Hospital, where the victim was a patient, and as such was responsible for her care. The defendant violated the position of trust inherent in the caregiver-patient relationship by attempting to rape the victim.
>
> B. Particularly Vulnerable Victim
> The victim was a patient at Eastern State Hospital. She had Huntington's [chorea], a progressive, degenerative, organic brain disease. This rendered the victim unable to speak and greatly diminished her motor skills. Essentially, she was unable to run away, fend off an attack, or cry out for help. The defendant knew this and this made her particularly vulnerable.

The court sentenced Mr. Soderquist to an exceptional sentence of 32 months. He appeals.

■ The first issue is whether, after viewing the evidence most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Mr. Soderquist acted with "forcible compulsion", one of the elements of RCW 9A.44.050(1)(a). *See State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

■ RCW 9A.44.010(6) defines "forcible compulsion" as including "physical force which overcomes resistance".

> The *force* to which reference is made in forcible compulsion "is not the force inherent in the act of penetration but the force used or threatened to overcome or prevent resistance by the female." (Footnote omitted.) 3 C. Torcia, *Wharton on Criminal Law* § 288, at 34 (14th ed. 1980) . . .. *Where the degree of force exerted by the perpetrator is the distinguishing feature between second and third degree rape, to establish second degree rape the evidence must be sufficient to show that the force exerted was directed at overcoming the victim's resistance and was more than that which is normally required to achieve penetration.*

(Footnote omitted. Italics ours.) *State v. McKnight*, 54 Wn. App. 521, 527-28, 774 P.2d 532 (1989).

The evidence of forcible compulsion meets the *Green* standard. Mr. Walker's testimony was that Ms. Smith's expression was "scared", *unlike any expression he had seen her exhibit before*, and that she was trying to lift herself back against the headboard, in a direction away from Mr. Soderquist. The combination of the lifting motion and the unusual facial expression distinguishes what he saw from the testimony of the other caregivers that Ms. Smith often backed away from them when they were trying to help her. It is evidence consistent with concluding that Ms. Smith was resisting Mr. Soderquist's sexual advances. Mr. Walker's testimony that Mr. Soderquist was on the bed, leaning over Ms. Smith with his pants down, is evidence that Mr. Soderquist was attempting to overcome that resistance. We hold the facts in evidence offered to prove forcible compulsion satisfy the *Green* test.

Second, do the trial court's reasons justify the exceptional sentence? Mr. Soderquist contends the Legislature considered vulnerability and abuse of trust when it set the standard range for second degree rape. He was convicted under subsection (1)(a), the forcible compulsion subsection of RCW 9A.44.050. Subsections (1)(b) and (1)(c) include the following in the definition of second degree rape: (1) intercourse with a physically helpless person, and (2) intercourse with a developmentally disabled person where the perpetrator has

supervisory authority over the victim.[2] The latter two situations involve a vulnerable victim and an abuse of trust; the first does not.

Mr. Soderquist's argument is based upon the analysis in *State v. Grewe*, 59 Wn. App. 141, 796 P.2d 438 (1990), *aff'd in part, rev'd in part*, 117 Wn.2d 211, 813 P.2d 1238 (1991). In *Grewe*, the defendant appealed his exceptional sentence for indecent liberties. The sentencing court found that he had violated a position of trust when he committed the crime. Former RCW 9A.44.100(1) provided that indecent liberties was committed whenever the victim was under the age of 14, former RCW 9A.44.100(1)(b), or when the victim was less than 16 and the perpetrator was more than 48 months older and was in a position of authority over the victim, former RCW 9A.44.100(1)(c). Even though Mr. Grewe was convicted under former RCW 9A.44.100(1)(b), the court held that abuse of trust could not justify his exceptional sentence because that factor was an element of

---

[2]The pertinent statutes are:

"A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person:

"(a) By forcible compulsion;

"(b) When the victim is incapable of consent by reason of being physically helpless or mentally incapacitated; or

"(c) When the victim is developmentally disabled and the perpetrator is a person who is not married to the victim and who has supervisory authority over the victim." RCW 9A.44.050(1).

"(5) 'Physically helpless' means a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act.

". . . .

"(10) 'Developmentally disabled,' for purposes of RCW 9A.44.050(1)(c) and 9A.44.100(1)(c), means a person as defined in [RCW 71A.10.020]." RCW 9A.44.010.

" 'Developmental disability' means a disability attributable to . . . [a] neurological . . . condition of an individual found by the secretary to be closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation, which disability originates before the individual attains age eighteen . . .. By January 1, 1989, the department shall promulgate rules which define neurological or other conditions . . ., and notify the legislature of this action." RCW 71A.10.020(2).

former RCW 9A.44.100(1)(c). *Grewe*, at 150. A factor considered by the Legislature in determining the standard range cannot be used to justify an exceptional sentence. *Grewe*, at 148 (citing *State v. Dunaway*, 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987)).

█ *State v. Grewe*, 117 Wn.2d 211, 813 P.2d 1238 (1991) was decided after the parties submitted their briefs in this case. The Supreme Court rejected the Court of Appeals' analysis that the Legislature had considered abuse of trust when setting the standard sentence range for a violation of alternative (b) of the indecent liberties statute. Former RCW 9A.44.100(1). The court held at pages 216-18:

> [The Court of Appeals'] analysis . . . requires a strained interpretation of the statute. Given the existence of defendant's position of authority as a school bus driver, he could have been charged under either alternative (b) or (c). However, since both indecent liberties victims were under the age of 14, the prosecutor elected to proceed solely under alternative (b) because it required proof of fewer elements. Under former RCW 9A.44.100(1)(b), a position of trust or authority was not required — the crime could be committed equally by a stranger or a person in a position of trust. A position of trust becomes relevant only when the victim is between the ages of 14 and 16. The Legislature itself created this distinction. Therefore, the Legislature did not likely consider the abuse of a position of trust in setting the standard sentence range for alternative (b). . . .
>
> . . . .
> By drafting alternative forms of the same crime, the Legislature manifested its belief a particular crime could be achieved by distinct combinations of elements. *Where a single criminal act includes all of the elements of one form of the crime as well as additional discrete elements from an alternative form, the crime exceeds that contemplated by the Legislature.* In drafting former RCW 9A.44.100(1), the Legislature viewed a position of authority as a necessary element only where the victim is between the ages of 14 and 16. Where a position of trust is abused when a child is under 14, a crime exceeding the Legislature's contemplation has been committed meriting an exceptional sentence. We reverse the Court of Appeals on this issue.

(Italics ours.) *See also State v. Marcum*, 61 Wn. App. 611, 612, 811 P.2d 963 (1991).

The Supreme Court's holding in *Grewe* supports the trial court's imposition of an exceptional sentence in the instant case. Mr. Soderquist was convicted under the forcible compulsion subsection of the second degree rape statute. RCW 9A.44.050(1)(a). Abuse of trust and vulnerability of the victim are not elements of the crime as defined in that subsection. Thus, they were properly considered by the trial court as aggravating factors meriting an exceptional sentence.

Affirmed.

SHIELDS, C.J., and MUNSON, J., concur.