# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75614-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICHAEL ANTHONY SANTOS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 26, 2018 |

SPEARMAN, J. — Defendant Michael Santos was beating and stabbing Vernon Mackprang when Mackprang's roommate, Thomas Tofflemoyer, attempted to intervene. Santos then cut Tofflemoyer with a large knife that witnesses described as being at least one foot long. Santos' companion later bound Tofflemoyer with duct tape as the two took several items from Tofflemoyer's home and then fled. Santos was convicted of second degree assault and unlawful imprisonment of Tofflemoyer with a deadly weapon enhancement. Santos appeals, arguing that insufficient evidence supports that the knife was over three inches long, and that the assault and unlawful imprisonment of Tofflemoyer constitute the same criminal conduct. We disagree and affirm.

## FACTS

Vernon Mackprang lived in his Kent home with Molly Bates and Thomas Tofflemoyer. Mackprang was disabled, and Bates and Tofflemoyer were his caregivers. In the early morning hours of July 22, 2015, Abbie Rupnick and defendant Michael Santos knocked on the door. Tofflemoyer answered. He recognized Rupnick as a friend of Mackprang's, and let both her and Santos in the house. Rupnick and Santos made their way into the bathroom, and then into the laundry room. Mackprang and Tofflemoyer followed.

In the laundry room, Rupnick pulled out metal scissors and asked if she could sharpen them. Tofflemoyer said no. Then, Rupnick asked if Mackprang had any .380 auto shells. Mackprang said that he did not. Tofflemoyer left the room briefly. Shortly after he returned, Rupnick and Santos began accusing Mackprang of being a "narc," "snitch," and "child molester." Verbatim Report of Proceeding (VRP) at 390; 701; 755. Santos hit Mackprang on the arm with a large knife, and then in the legs, hand, and head. Tofflemoyer told them that Mackprang wasn't a snitch. In response, Santos hit Tofflemoyer in his chin with the knife.

During this time, Rupnick got the keys to Mackprang's locked bedroom, went into the bedroom, and took an iPad. Bates was awoken by a loud noise and went into the laundry room to investigate. Rupnick duct taped Bates' mouth and her hands behind her back. She then taped Tofflemoyer's hands behind his back. Rupnick tried to bind Mackprang's hands together, but was having difficulty because the tape would not stick to his bloody skin. As she continued her efforts,

Mackprang managed to get to his feet. He pushed Rupnick across the room and tackled her to the ground. Rupnick began to punch Mackprang in the face and then stabbed him in the neck and head with a different knife.

In the melee, Bates managed to escape the house. She screamed for help as she fled down the street. Rupnick was fearful that Bates would attract the police and told Santos that they should leave. Santos grabbed some of Mackprang's belongings and then left, along with Rupnick.

Santos was charged with first degree assault for victim Mackprang, second degree assault for victim Tofflemoyer, first degree robbery, and unlawful imprisonment of Tofflemoyer. A jury convicted Santos of first and second degree assault, and unlawful imprisonment. The jury also found that Santos was armed with a deadly weapon when he committed those acts. He was sentenced to 290 months in prison along with a consecutive combined term of 42 months for each deadly weapon enhancement.

Santos appeals.

## DISCUSSION

Santos makes two arguments on appeal. First, he contends that there is insufficient evidence that the knife was at least three inches long for the deadly weapon special verdict. Second, he argues that the assault and unlawful imprisonment were the same criminal conduct for the purpose of his offender score.

The trial court instructed the jury that a "deadly weapon" includes "[a] knife having a blade longer than three inches...." Clerk's Papers (CP) at 65. Santos

3

contends the evidence is insufficient to support the jury's finding that he was armed with a knife with at least a three inch blade at the time he committed his crimes. Thus, he argues that the court erred in imposing the deadly weapon enhancements.

Evidence is sufficient when, viewed in the light most favorable to the State, it supports a rational fact finder's finding of guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Green, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980)). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn from it. Id. at 201. On review, circumstantial and direct evidence carry equal weight. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004) (citing State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)).

At trial, three witnesses testified that they saw Santos' knife. Tofflemoyer described the knife as a "big bowie knife" that "was probably 20 inches long." VRP at 703. Bates described the knife as a "bowie knife" that was "probably a foot and some." VRP at 757. Mackprang described the knife as "over a foot long, a foot and a half." VRP at 396. While the knife itself was never recovered, officers found a backpack in the trunk of the defendant's wife's car that contained an empty knife sheath large enough to cover a large knife.

Santos argues that because the knife was never recovered and witnesses described it inconsistently, there is insufficient evidence that the knife was at least three inches long. We disagree. The witnesses, two of whom Santos cut

4

with the knife, consistently testified that the knife was well over three inches long. This evidence is sufficient to support the deadly weapons enhancement.

Santos also argues that the unlawful imprisonment and assault of Tofflemoyer are the same criminal conduct for the purpose of his offender score.

Under the Sentencing Reform Act of 1981, ch. 9.94A RCW, a trial court's sentence will not be disturbed unless the sentencing court abuses its discretion or misapplies the law. State v. Elliott, 114 Wn.2d 6, 17, 785 P.2d 440 (1990). Crimes constitute the same criminal conduct only if they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a); State v. Graciano, 176 Wn.2d 531, 540, 295 P.3d 219 (2013). And, as part of this analysis, courts consider whether one crime furthered another. Id. The defendant bears the burden to establish that the crimes constitute the same criminal conduct. Id. at 539.

The primary issue in this case is whether Santos' criminal intent was the same when he unlawfully imprisoned and assaulted Tofflemoyer. Santos contends that it was. Santos argued below, and in his brief on appeal, that the unlawful imprisonment of Tofflemoyer facilitated the commission of the assault and thus, were the same criminal conduct. The trial court rejected the argument, reasoning while it could imagine a scenario where restraining someone with duct tape could be done to facilitate an assault, that was not the case here. The evidence in this case showed that Tofflemoyer was being restrained "so that Ms. Rupnick could run around the apartment and look for ammunition or drugs. . . ." VRP at 1180. Because there was no evidence that the unlawful restraint of

5

Tofflemoyer facilitated Santos' assault on him, the court concluded that the crimes did not share the same intent and, therefore, were not the same criminal conduct. The trial court's factual finding is well supported by the evidence at trial, and the conclusion that the crimes were not the same criminal conduct logically flows from this finding. Thus, there was neither an abuse of discretion nor a misapplication of the law.

The sentencing court did not err in finding that the assault and unlawful imprisonment of Tofflemoyer was not the same criminal conduct.[1]

Affirmed.

WE CONCUR:

_Spearman, J._

_Trickey, ACJ_                    _Dwyer, J._

[1] Until recently, it was clear that the "same intent" in the same criminal conduct analysis did not refer to the particular *mens rea* element of the particular crime. Rather, the focus was "on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. ... [P]art of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same." State v. Dunaway, 109 Wn.2d 207, 215, 743 P.2d 1237 (1987). But in two recent cases involving defendants convicted of child rape and incest against the same victim, our Supreme Court has held that when determining "same intent" for same criminal conduct purposes, the test was whether the two crimes have the same statutory intent. The court held that "objectively, viewed, under the statutes, the two crimes [incest and child rape] involve separate intent. The intent to have sex with someone related to you differs from the intent to have sex with a child. Chenoweth's single act is comprised of separate and distinct statutory criminal intents and therefore under RCW 9.94A.589(1) do not meet the definition of 'same criminal conduct.'" State v. Chenoweth, 185 Wn.2d 218, 223, 370 P.3d 6 (2016). See also State v. Bobenhouse, 166 Wn.2d 881, 896, 214 P.3d 907 (2009). The State urges us to apply the same test here. We decline to do so for several reasons. First, the test enunciated in Dunaway is long standing and has not been expressly overruled. Second, the test enunciated in Chenoweth, has not been used outside the context of cases involving both child rape and incest. Third, because the State did not raise this issue below the trial court did not have the opportunity to rule on it. And, finally, because, we would reach the same result in any event. The statutory intent elements for unlawful imprisonment and second degree assault are not the same. The former requires that the perpetrator "knowingly restrain" the victim, while the latter requires that the perpetrator intend to assault the victim. CP at 49; 58.