**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57224-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| COURTNEY PROSSER, | |
| Appellant. | |

CHE, J. — Courtney Bryce Prosser appeals the calculation of his offender score, and the

imposition of community custody supervision fees and a DNA collection fee. In 2018, a jury

convicted Prosser of first degree robbery while armed with a deadly weapon other than a firearm,

possession of a stolen vehicle, and possession of a controlled substance. Prosser was resentenced

in 2022 after the Washington Supreme Court's decision in *Blake*.[1] During the resentencing

hearing, Prosser contended that either his two 2006 firearm convictions should merge with each

other and with the 2006 robbery conviction, or alternatively, the two firearm convictions should

merge with each other.[2] The trial court, however, counted Prosser's 2006 offenses separately

and imposed a sentence on the 2018 first degree robbery conviction based on the State's offender

score calculation of 8 points. The trial court determined that Prosser was indigent but imposed

---

[1] *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021) (holding the simple drug possession statute unconstitutional).

[2] In Whatcom County Cause No. 06-1-00397-0, Prosser pled guilty to first degree burglary, first degree robbery, unlawful possession of a stolen firearm, and second degree unlawful possession of a firearm from an incident on March 20, 2006.

community custody supervision fees and a DNA collection fee.  On appeal, Prosser argues that

his 2006 first degree burglary and his first degree robbery convictions constituted the same

criminal conduct and should have counted as one point.

We hold that (1) the trial court did not miscalculate Prosser's offender score because his

2006 burglary and robbery convictions do not constitute the same criminal conduct, (2) Prosser

was not prejudiced by his counsel's failure to argue that his prior robbery and burglary offenses

constituted the same criminal conduct, and (3) both the community custody supervision fees and

DNA collection fee should be stricken.  Consequently, we affirm Prosser's sentence but remand

to the trial court to strike both the community custody supervision and DNA collection fees.

## FACTS

In 2018, a jury convicted Prosser of first degree robbery while armed with a deadly

weapon other than a firearm, possession of a stolen vehicle, and possession of a controlled

substance.  At sentencing, Prosser neither contested his offender score nor raised whether his

2006 convictions constituted the same criminal conduct.  The trial court counted the 2006

convictions separately and sentenced Prosser to 158 months of total confinement.  Following the

Washington Supreme Court's decision in *Blake*,[3] the parties jointly moved to vacate Prosser's

conviction for possession of a controlled substance and resentence Prosser.

During the resentencing hearing in 2022, the State provided evidence of Prosser's 2006

convictions.  On March 20, 2006, Prosser and three accomplices unlawfully entered Thomas

Murphy's residence "yelling for someone who did not live there."  Clerk's Papers (CP) at 113.

Prosser held Murphy at gunpoint, while two accomplices proceeded to the bedroom.  Another

---

[3] *Blake*, 197 Wn.2d 170.

accomplice briefly left the apartment and returned with a baseball bat. Following their departure from the residence, Murphy reported that "he was missing five baseball hats and he saw one of the suspects carrying out his climbing pack." CP at 114. Prosser pleaded guilty to first degree burglary, first degree robbery, unlawful possession of a stolen firearm, and second degree unlawful possession of a firearm.

At his resentencing, Prosser argued for a reduction in his offender score by merging his 2006 convictions. Specifically, Prosser contended that either "the [two firearm convictions should] merge with each other and with the robbery in the first degree" or "at a minimum, [the two firearm convictions should] merge with . . . each other." Rep. of Proc. (RP) at 21. The State responded "that the criminal intent for possession of a stolen firearm is different than the criminal intent for unlawful possession of a firearm, as is different from the criminal intent of robbery in the first degree and burglary in the first degree." RP at 23.

The State argued that Prosser's offender score was 8 points on the 2018 first degree robbery conviction and recommended the high end of the range plus the 24 months firearm enhancement for 168 months of total confinement. Prosser argued that his offender score should be 6 after the two firearm convictions merged into the robbery conviction. But if the trial court adopted an offender score of 8, Prosser argued for 137 months of total confinement. After considering arguments presented by both parties, the trial court treated Prosser's 2006 convictions as separate offenses and adopted the State's offender score calculation. The trial court sentenced Prosser to 140 months of total confinement.

The trial court found that Prosser was indigent and intended to impose only the minimum legal financial obligations (LFOs). However, Prosser's judgment and sentence includes community custody supervision fees and a DNA collection fee.

Prosser appeals.

ANALYSIS

I. SAME CRIMINAL CONDUCT

Prosser argues that the trial court miscalculated his offender score by failing to find his 2006 burglary and robbery convictions constituted the same criminal conduct. To that end, Prosser contends that the trial court either misapplied the law concerning same criminal intent or abused its discretion by failing to address the same criminal conduct analysis on the record.

The State argues that the trial court did not miscalculate Prosser's offender score because Prosser's burglary and robbery offenses did not share the same criminal intent and did not occur at the same time. The State also contends that the trial court did not abuse its discretion because it is not required to conduct a same criminal conduct analysis on the record. We agree the trial court did not err in calculating Prosser's offender score.

We review the trial court's determination of the same criminal conduct for abuse of discretion or misapplication of law. *State v. Aldana Graciano*, 176 Wn.2d 531, 535, 295 P.3d 219 (2013). Under this standard, when the record supports only one conclusion regarding whether crimes should be considered the same criminal conduct, a trial court would be deemed to have abused its discretion if it reached a contrary result. *Id*. at 537-38. However, when the record sufficiently supports either conclusion, the matter falls within the discretion of the court and "[we] will defer to 'the trial court's determination of what constitutes the same criminal

conduct when assessing the appropriate offender score.'" *State v. Rodriguez*, 61 Wn. App. 812, 816, 812 P.2d 868 (1991) (*citing State v. Burns*, 114 Wn.2d 314, 317, 788 P.2d 531 (1990)).

It is the defendant's burden to establish that the crimes constitute the same criminal conduct. *Aldana Graciano*, 176 Wn.2d at 539. Crimes are considered the same criminal conduct for sentencing purposes if they (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim. RCW 9.94A.589(1)(a). If a defendant fails to establish all of these elements, the convictions must be counted separately in calculating the offender score. *Id.* Put another way, the absence of any one of the three elements precludes a finding of the same criminal conduct. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

In determining whether the crimes involve the same criminal conduct, we first identify the statutory definitions of the crimes to determine the objective intent for each crime. *State v. Westwood*, 2 Wn.3d 157, 167, 534 P.3d 1162, 1168 (2023). If the statutory objective intents are the same or similar, "courts can then look at whether the crimes furthered each other and were part of the same scheme or plan." *Westwood*, 2 Wn.3d at 168. Subjective intent is irrelevant. *State v. Dunaway*, 109 Wn.2d 207, 216, 743 P.2d 1237, 749 P.2d 160 (1987). "If the actions occurred in close proximity, and the nature of the crime did not change significantly throughout," the offenses may be regarded as constituting the same criminal conduct for sentencing purposes. *Westwood*, 2 Wn.3d at 168.

Here, we need not decide whether the second and third elements of the same criminal conduct test are satisfied because Prosser's burglary and robbery convictions do not share the same statutory objective intent.

RCW 9A.52.020 provides:

> (1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

RCW 9A.56.190 provides:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone.

Looking at the relevant statutes, the objective intent for first degree burglary is to enter or remain unlawfully while armed with a deadly weapon, while the objective intent for robbery is to acquire property through the threat or use of immediate force. *See* RCW 9A.52.020; RCW 9A.56.190. The statutory intents are different and are not similar. First degree burglary does not require or share an intention to acquire property through a threat or use of immediate force, and robbery does not require or share an intention to enter or remain in a building or residence while armed with a deadly weapon. Thus, the trial court did not misapply the law when it counted Prosser's burglary and robbery convictions separately.

Prosser contends that the burglary and robbery "were both committed with theft as the objective." Br. of Appellant at 9. But this focuses on Prosser's subjective intent and as explained above, subjective intent is irrelevant. *Dunaway*, 109 Wn.2d at 216. It also ignores that the objective intent of burglary was completed upon breaking into the residence while armed with a deadly weapon. *Lessley*, 118 Wn.2d at 778.

To the extent that Prosser contends that the burglary and robbery crimes furthered each other or were part of the same scheme or plan, because Prosser fails to establish that the statutory

objective intents are the same or similar, we do not take the next step and consider whether the crimes furthered each other or were part of the same scheme or plan. *Westwood*, 2 Wn.3d at 168 ("If the objective intent for the offenses were the same or similar, courts can then look at whether the crimes furthered each other and were part of the same scheme or plan").

Prosser also argues that the trial court abused its discretion by failing to address the same criminal conduct analysis on the record. However, neither the same criminal conduct statute nor case law requires the trial court to go through a comprehensive analysis on the record of each element of same criminal conduct. *State v. Anderson*, 92 Wn. App. 54, 62, 960 P.2d 975 (1998) (treating the trial court's offender score calculation "as an *implicit* determination that [the] offenses did not constitute the same criminal conduct") (emphasis added). The fact that the trial court heard arguments from both parties and decided to adopt the State's offender score calculation is sufficient for appellate review. Therefore, the trial court did not abuse its discretion when it simply agreed with the State's offender score calculation after listening to arguments and having been presented with copies of the sentencing documents related to Prosser's 2006 convictions.

Accordingly, the trial court neither misapplied the law nor abused its discretion in refusing to treat Prosser's 2006 first degree robbery and first degree burglary convictions as the same criminal conduct.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Prosser argues that his counsel was ineffective in failing to specifically argue that the first degree robbery and first degree burglary constituted the same criminal conduct.

The State argues that Prosser did not receive ineffective assistance of counsel because his counsel's performance was neither deficient nor prejudicial. We agree with the State that Prosser's ineffective assistance of counsel claim fails.

To demonstrate ineffective assistance of counsel, a defendant must show (1) defense counsel's representation was deficient; and (2) his or her deficient representation prejudiced the defendant. *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). Performance is deficient when it "[falls] below an objective standard of reasonableness based on consideration of all of the circumstances." *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 248. There is a strong presumption that the counsel is effective. *Id.* at 247.

Here, even if we assume that Prosser's counsel was deficient in failing to argue that Prosser's 2006 burglary and robbery convictions encompassed the same criminal conduct, Prosser is unable to show prejudice. As discussed above, Prosser's first degree burglary and first degree robbery convictions do not encompass the same criminal conduct so the result of the proceeding would not have been different even if counsel raised the argument to the trial court. Accordingly, Prosser's ineffective assistance of counsel claim fails.

## III. LEGAL FINANCIAL OBLIGATIONS

Prosser argues that both the community custody supervision fees and DNA collection fee should be stricken from his judgment and sentence. The State concedes that the fees should be stricken. We accept the State's concession and agree that the fees should be stricken from Prosser's judgment and sentence.

No. 57224-9-II

As of July 1, 2022, amended RCW 9.94A.703(2) no longer provides the trial court the authority to impose community custody supervision fees. Former RCW 43.43.7541 provides that the DNA collection fee is mandatory unless the offender's DNA previously had been collected as the result of a prior conviction. But, the legislature has eliminated this fee provision, effective July 1, 2023. LAWS OF 2023, ch. 449, § 4.

Here, the trial court found Prosser indigent and imposed only the mandatory minimum LFOs. Because Prosser's case is on direct appeal, amendments to RCW 9.94A.703(2) and RCW 43.43.7541 apply. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Therefore, the community custody supervision fees and the DNA collection fee should be stricken from Prosser's judgment and sentence.

## CONCLUSION

We affirm Prosser's sentence but remand to the trial court to strike both the community custody supervision and DNA collection fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Lee, J.

9