
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
       )    No. 67778-1-I
       Respondent, )
       )    DIVISION ONE
       v. )
       )    UNPUBLISHED OPINION
DERRICK A. VALENTINE, )
       )
       Appellant. )    FILED: March 11, 2013
       )

APPELWICK, J. — Valentine was convicted of second degree assault, fourth degree assault, and felony harassment. We accept the State's concession that Valentine's conviction for fourth degree assault violated the double jeopardy clause. Any error in admitting statements that were the product of custodial interrogation was harmless and the trial court properly calculated his offender score. We remand for the trial court to vacate his fourth degree assault conviction and otherwise affirm.

## FACTS

On May 15, 2011, Derrick Valentine and Mary Cason got into a loud argument in their shared apartment. Cason dialed 911 on her cellular phone. Although she did not speak to the operator, she held the phone so that the operator could hear Valentine yelling. Valentine was aware that Cason called 911 and yelled directly at the operator. Valentine then left the apartment and walked to a nearby store.

While Valentine was gone, police officers responded to the 911 call. Cason let the officers into the hallway and told them that the previous night Valentine hit her on the head and pushed her, leaving marks on her face and arm. While they were talking, Valentine walked into the building. Officer Derek Anderson spoke with Valentine and arrested him.

After Valentine waived his right to silence, he stated that he and Cason had pushed each other on May 14 and acknowledged that he pushed a cookie jar off a table and broke it. He said that he and Cason had a violent relationship and that the abuse was mutual. Valentine also expressed his belief that denial was futile, because in Washington, "they believe what a woman says anyway."

Based on Valentine's acts on May 14, the State charged Valentine with assault in the second degree, assault in the fourth degree, and felony harassment. It added aggravating factors to the assault in the second degree and felony harassment charges, alleging that they were domestic violence offenses and that the crimes were part of an ongoing pattern of psychological, physical or sexual abuse manifested by multiple incidents over a prolonged period of time.

According to Cason, Valentine was angry with her on May 14, because she went to brunch with her daughter instead of helping Valentine with his resume. Valentine was not home when Cason came home from brunch. But, soon after she got back to the apartment, Valentine called her three times and swore at her for not helping him. Based on past experiences Cason expected that Valentine would hit her when he returned. She put some clothes in her car so she could quickly leave if necessary. Then, she went back inside and waited for Valentine to arrive. She was sitting down

2

crocheting when Valentine came home. He was immediately angry at Cason for not helping him. He shouted and cursed, and Cason could tell he had been drinking. Valentine stood over Cason, swore at her, and used both hands to hit her on both sides of her head. The strike caused Cason's glasses to cut into her eye. Cason got up to leave, but Valentine stood between her and the door. He pushed a glass cookie jar onto the floor and it broke. Then, Valentine grabbed Cason by the throat to prevent her from leaving. He held her hard enough so that Cason could not breathe. Her throat was sore for several days after. Valentine told her that if she called the police, he would kill her. He released her and she fell on the broken cookie jar. Cason got up and ran to her car. Pictures admitted at trial were described as showing the mark on Cason's face from where Valentine hit her and an injury to her arm sustained when she fell on the broken cookie jar.

Cason also testified to a pattern of assault and threats during her 17 month romantic relationship with Valentine. He first started hitting her a few months into their relationship, and the violence got worse when they moved in together in August 2010. When prompted to estimate how many times Valentine had assaulted her, she said there were too many times to count. But, she described several events that stuck with her.

When Valentine could not find his driver's license, he told Cason he was going to cut her throat with a box cutter. He eventually found the license and apologized. But, he showed Cason the box cutter to establish that the threat was real. When Cason did not want to make a grocery list, Valentine slapped her and left her with a black eye. When Cason purchased cookies for Valentine, he beat her because they were too

expensive. Another time, Valentine thought a man in a car was there to meet Cason. He told Cason he was going to bash her head in and throw her into a pond. On several occasions, Valentine choked Cason, and at least twice he choked her hard enough so that she lost her breath.

Cason testified that Valentine did not make idle threats. One time, he told Cason that he was going to beat her up in two days, and two days later he beat her up. On another occasion, he told her he was going to beat her up in three days, and again he followed through three days later.

Valentine also told Cason that he tried to kill his ex-wife, because she cheated on him. He revealed that he choked her until she turned blue, but stopped because they had children together and he did not want them to grow up without any parents.

The jury found Valentine guilty on all three counts and answered "yes" on special verdict forms for each of the aggravating factors.

## DISCUSSION

Valentine argues that he was convicted twice for the same offense, that Cason testified about statements he made during a custodial interrogation before he was arrested, and that his offender score was miscalculated, because it did not treat his assault and harassment charges as the same criminal conduct. In a statement of additional grounds, Valentine argues that the trial court erred by admitting evidence of previous incidents of domestic violence against Cason and by not bifurcating the aggravator of pattern of domestic violence from the trial.

4

## I.   Double Jeopardy

Valentine argues that his conviction for both second degree assault and fourth degree assault violates the double jeopardy clause.   He claims that fourth degree assault is a lesser included offense of second degree assault and that the offenses in this case occurred during a single, uninterrupted episode.   The State concedes error. We accept the State's concession and remand for the trial court to vacate the fourth degree assault conviction and strike the reference to the fourth degree assault charge from the felony judgment and sentence.

## II.   Custodial Statements

Prior to trial, Valentine made a CrR 3.5 motion to suppress statements he made before he was arrested and advised of his Miranda rights.   Miranda v. Arizona, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).   Miranda warnings protect a suspect's constitutional right not to make incriminating statements while in the coercive environment of police custody.   State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004).   They must be given whenever a suspect is subjected to a custodial interrogation by a State agent.   Id.   A custodial interrogation occurs when a reasonable person in a suspect's position would have felt that his or her freedom was curtailed to the degree associated with a formal arrest.   Id. at 218.

The trial court held a hearing and entered written findings of fact and conclusions of law.   It found that while Officer Anderson spoke with Cason, Valentine walked through a door at the opposite end of the hallway.   Officer Anderson approached Valentine and asked what happened.   Valentine said that he had not put his hands on Cason that day, but that they had been in a fight the day before.   Valentine indicated,

5

"[Y]ou might as well arrest me then." Officer Anderson arrested Valentine and read him his rights. The trial court ruled that only statements made after Valentine was arrested were admissible. It also incorporated its oral findings and conclusions.

At the hearing, the trial court explained:

> [I]t's clear to me that at the time that the defendant happened upon the arresting officer and the alleged victim that he was a suspect, the only suspect in a crime, that the officer had probable cause to arrest him. And that he was, while there was some different perspective expressed by the officer, it's clear to the court that he was not free to leave at that time. Therefore, I'm going to hold that the statements that the defense is objecting to, words to the effect, why don't you just arrest me, is not admissible under Rule 3.5. But, the statements that were given to both the officer, the arresting officer and the detective after each of them separately Mirandized him were knowing, intelligent and voluntary.

After defense counsel requested further clarification, the trial court said, "All the statements that were given to Officer Anderson pre-Miranda are not admissible under [CrR] 3.5."

Nevertheless, at trial Cason described what happened when Valentine was arrested:

> As soon as he came through the door he said, oh, you come to arrest me.
> He put his hands on the wall, turned to put his hands on the back.

She confirmed that he made a gesture of, "arrest me." Defense counsel did not object to Cason's testimony. The State did not question any other witnesses about Valentine's prearrest statements and did not mention Cason's statements in its closing argument.

Valentine argues that Cason's testimony violated his right not to incriminate himself, because it revealed statements he made during a custodial interrogation. Proceeding on the assumption that there was an error of constitutional magnitude, we

6

first consider whether Valentine properly preserved the issue for appeal.[1] When evidence is excluded by a pretrial order, a party should object when the evidence is used at trial in order to preserve the objection. State v. Weber, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006). The purpose of the rule is to give the trial court an opportunity to determine if the challenged evidence is covered by a pretrial ruling and give a curative instruction if appropriate. Id. at 272. Otherwise, a party "'could simply lie back, not [allow] the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal.'" Id. at 271-72 (quoting State v. Sullivan, 69 Wn. App. 167, 172, 847 P.2d 953 (1993)).

Valentine argues, without citation, that he had no duty to object to properly preserve the issue for appeal. The practical consequence of this dispute is that prejudice is presumed when a constitutional error is properly preserved. State v. Stephens, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980). In contrast, we will only review an error raised for the first time on appeal if it is manifest and truly of constitutional dimension. State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). To establish that the error is manifest, the appellant must make a showing of actual prejudice by

---

[1] The State claims that Cason's statements were neither covered by the trial court's order nor the result of a custodial interrogation. It attempts to distinguish Cason's testimony from the suppressed evidence on two bases. First, that Cason reported Valentine said, "[O]h, you come to arrest me," while Officer Anderson reported Valentine said, "[Y]ou might as well arrest me." And, second, that Cason testified Valentine made the statement as soon as he saw the officers, and Officer Anderson said they had a short discussion before Valentine made the statement. The State has not made a compelling showing that Cason testified about different statements, as opposed to merely another witness's account of the same events. The trial court entered findings regarding what happened when Valentine came into the building, and the State has not challenged those findings. Based on those undisputed findings, the trial court ruled that all the pre-Miranda statements to Officer Anderson were inadmissible. That ruling encompassed Cason's testimony.

identifying how the alleged constitutional error actually affected his or her rights at trial. Id. at 926-27. Here, Valentine did not object when the challenged testimony was given and he did not properly preserve the alleged error. Valentine must establish that there was a manifest constitutional error. Even assuming the evidence affected his Fifth Amendment right against self-incrimination, it is readily apparent that the prejudice, if any, was minimal and the error was harmless.

A constitutional error is harmless if the reviewing court is convinced beyond a reasonable doubt that the error did not affect the verdict. State v. Monday, 171 Wn.2d 667, 680, 257 P.3d 551 (2011). Valentine argues that the error was not harmless, because the State's case came down to a credibility determination, and Cason's testimony "implied [Valentine] thought the evidence was sufficient to arrest him, to find him guilty of the crimes." That, however, is not the necessary implication of Cason's testimony. Valentine acknowledged that he pushed Cason and damaged her property. Valentine knew that Cason called 911, and he yelled directly at the 911 operator over the phone. After waiving his right to remain silent, he stated that he distrusts police and thinks that police always believe the woman in domestic disputes. In that context, it is neither surprising nor prejudicial that when he walked inside and saw police officers Valentine remarked, "[O]h, you come to arrest me." That statement is consistent with his belief that he was going to be arrested. It did not demonstrate consciousness of guilt.

Although Valentine correctly argues that Cason's credibility was important to the State's case, Cason's testimony was not the sole evidence of Valentine's guilt. As mentioned, Valentine acknowledged that he pushed Cason and broke her cookie jar.

The jury heard him screaming at Cason and a 911 operator in the heat of an argument. The jury also saw pictures of Cason's injuries that were consistent with her version of events. All of that evidence bolstered Cason's testimony.

And, Cason only briefly mentioned Valentine's pre-Miranda statements. Those statements were not reiterated by any other witnesses and were not used during closing argument. Further, defense counsel's failure to object strongly suggests that Cason's testimony did not appear critically prejudicial to Valentine in the context of the trial. State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990). Any error was insignificant in the overall context of the case, and it is harmless beyond a reasonable doubt.

III.   Offender Score Calculation

At sentencing, the trial court counted the felony harassment and second degree assault convictions separately in calculating Valentine's offender score. Valentine argues on appeal that the crimes are the same criminal conduct and should not have been counted separately. Valentine did not raise this argument at trial, and accordingly the trial court did not make any findings of fact. Thus, there is a threshold issue of whether Valentine is entitled to make this argument for the first time on appeal.

A defendant is entitled to challenge the trial court's offender score calculation for the first time on appeal when the alleged error is a legal error. State v. McCorkle, 137 Wn.2d 490, 495-96, 973 P.2d 461 (1999). For instance, a defendant does not need to object at sentencing to challenge the State's failure to introduce any evidence to support the classification of out-of-state convictions. State v. Ford, 137 Wn.2d 472, 475, 484-85, 973 P.2d 452 (1999). But, a defendant waives any challenge to the offender score calculation when the alleged error involves a matter of trial court discretion. In re Pers.

9

Restraint of Goodwin, 146 Wn.2d 861, 874, 50 P.3d 618 (2002); In re Pers. Restraint of Shale, 160 Wn.2d 489, 494, 158 P.3d 588 (2007). Application of the same criminal conduct statute is just such an issue. It involves factual determinations and the exercise of discretion. State v. Nitsch, 100 Wn. App. 512, 523, 997 P.2d 1000 (2000). As we explained in Nitsch, if waiver were not possible it could work to the defendant's advantage not to raise the same criminal conduct issue at sentencing:

> If a defendant can wait to raise the same criminal conduct issue on appeal, he can try one argument with the trial court while reserving the other and, if the first is unsuccessful, he can ask the appellate court to remand for consideration of the second (factually inconsistent) argument. Lapses of memory or changes in prosecutorial or judicial personnel may then work to his advantage, and in any event, finality is postponed. From the point of view of a defendant with nothing to lose, this is a windfall.

Id. at 524.

Valentine waived the right to make his same criminal conduct argument. Even if he was entitled to raise the issue on appeal, the trial court's determination of same criminal conduct is reviewed for an abuse of discretion. State v. Wilson, 136 Wn. App. 596, 613, 150 P.3d 144 (2007). It is clear that the trial court did not abuse its discretion.

Crimes are considered the same criminal conduct if they require the same criminal intent, are committed at the same time and place, and involve the same victim. RCW 9.94A.589(1)(a). Here, there is no dispute that the crimes were committed at the same time and place and involve the same victim. The only issue is whether the offenses required the same criminal intent.

Whether multiple offenses require the same criminal intent is measured by determining whether the criminal intent, viewed objectively, changed from one crime to another. State v. Dunaway, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987).

Intent is not the particular mens rea element of the crime, but rather the offender's objective criminal purpose in committing the crime. State v. Adame, 56 Wn. App. 803, 811, 785 P.2d 1144 (1990). Intent may also be determined by examining whether one crime furthered the other or whether both crimes were part of a recognizable scheme or plan. State v. King, 113 Wn. App. 243, 295, 54 P.3d 1218 (2002).

Valentine argues that the felony harassment and second degree assault occurred simultaneously and thus he had no time or opportunity to pause, reflect, and form a new criminal intent. Indeed, in State v. Tili, the Supreme Court determined that the defendant's offenses were so continuous and uninterrupted, and occurred within such a short time frame, that he had the same criminal intent for each offense. 139 Wn.2d 107, 124, 985 P.2d 365 (1999). But, the separate offenses in that case were three counts of rape for penetrating the victim three times within a two minute timeframe. Id. at 111-12. The offenses were part of an uninterrupted sequence in which the defendant repeatedly committed the same crime. This case has a similarly short timeframe, because Valentine grabbed Cason by the throat, pushed her to the ground, and threatened to kill her before releasing her. But, unlike in Tili, the separate offenses in this case are different crimes with different criminal intents.

Valentine also claims that the assault furthered the felony harassment, because the assault must have contributed to Cason's fear that Valentine would actually kill her. It is certainly true that in some cases assault could be committed in furtherance of felony harassment, and the trial court would be compelled to find that the offenses were the same criminal conduct. But, this is not such a case. According to Cason's testimony, at the time Valentine strangled her and threatened to kill her, he had already

11

struck and pushed her. Cason testified that he grabbed her because in past altercations she had run away and he wanted her to stay. Indeed, Valentine had already legitimized the threat by assaulting her that night and on multiple other occasions and demonstrating that he followed through with his threats. The past incidents established the verity of Cason's statement that she knew Valentine "didn't make idle threats." Thus, the more reasonable view is that Valentine's objective intent in assaulting Cason was either to harm her or stop her from leaving, not to legitimize the threat. Rather, he threatened her to prevent her from calling the police. As noted in Wilson, the fact that assault and harassment have different criminal intents by definition supports a conclusion that they are not the same criminal conduct. 136 Wn. App. at 615. At a minimum, this second possible interpretation prevents a finding that the trial court could only have properly reached the conclusion that this was the same criminal conduct. The trial court did not abuse its discretion.

Valentine argues in the alternative that his counsel was ineffective for failing to raise the issue of same criminal conduct. To establish ineffective assistance of counsel, a defendant must that the attorney's performance fell below an objective standard of reasonableness and that the deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Prejudice exists where there is a reasonable probability that, but for counsel's performance, the result would have been different. State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). Prejudice does not require a showing that counsel's actions more likely than not altered the outcome, but the likelihood of a different result must be substantial, not just

12

conceivable. Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011).

Valentine cites State v. Saunders, 120 Wn. App. 800, 825, 86 P.3d 232 (2004), for the proposition that, "failure to argue same criminal conduct at sentencing amounts to ineffective assistance of counsel if the evidence is sufficient to allow a fact-finder to find that multiple offenses are the same criminal conduct." To the contrary, a claim for ineffective assistance is not satisfied merely because the facts in the record would support a finding either way on a discretionary issue. Valentine's proffered interpretation creates a perverse incentive to not raise discretionary issues with the trial court and relies too heavily on the ultimate outcome of Saunders instead of the well-established requirements of deficient representation and prejudice. The Saunders court determined that the defendant received ineffective assistance of counsel, because defense counsel failed to argue that his convictions for rape and kidnapping related to the same criminal conduct. Id. at 825. But, in determining that the failure was prejudicial it explained that case law provided "strong support" for such an argument. Id. at 825. In contrast, no line of case law suggests similar "strong support" for such an argument with respect to the charged offenses here. Valentine has not articulated how counsel provided deficient representation merely by failing to pursue a discretionary ruling. Likewise, he has not established a reasonable probability that the trial court would have agreed with his position on appeal that the assault and harassment charges were part of the same criminal conduct.

IV.    Statement of Additional Grounds

Valentine makes two additional arguments in a statement of additional grounds. He claims that the trial court failed to make required findings before admitting evidence of previous incidents of domestic abuse pursuant to ER 404(b), and erred by refusing to bifurcate the aggravating factor of pattern of domestic violence from trial.

Although ER 404(b) does not on its face impose any burden on the trial court to enter findings, appellate courts have consistently imposed such a requirement.  The trial court must identify the purpose for which the evidence is sought to be introduced, determine whether the evidence is relevant to an essential element of the crime charged, and determine whether the probative value of the evidence is outweighed by its prejudicial effect.  State v. Dennison, 115 Wn.2d 609, 628, 801 P.2d 193 (1990).

In his trial memorandum, Valentine requested that the trial court hold a preliminary hearing if the State attempted to introduce evidence of prior misconduct. The State's trial brief is not in the record, but it appears that the State argued that Valentine's previous incidents of domestic abuse were admissible to establish the elements of felony harassment and rebut an anticipated self-defense theory.  In a pretrial hearing, the trial court indicated that the evidence was likely to come in unless it determined that the evidence was more prejudicial than probative.  It indicated that it needed to look at the jury instructions to see the elements for felony harassment to be sure.  Before trial began, the trial court stated, "I received the instruction on Felony Harassment.  This confirms my inclination I gave to you yesterday that the [ER] 404(b) evidence is admissible."

Thus, the trial court did not enter express findings before admitting evidence of prior domestic abuse. The failure to enter such findings, however, does not render otherwise admissible evidence inadmissible. State v. Gogolin, 45 Wn. App. 640, 645, 727 P.2d 683 (1986). "[W]here, from the record as a whole, the reviewing court can decide issues of admissibility without the aid of an articulated balancing process on the record, the court should do so." Id. For that reason, a failure to articulate the basis for admission does not necessarily require reversal. State v. Carleton, 82 Wn. App. 680, 686, 919 P.2d 128 (1996). Rather, any error is harmless unless the defendant establishes that, within reasonable probabilities, the outcome of the trial would have been different if the error had not occurred. Id. The error is harmless when the record is sufficient to show that, if the trial court had conducted the proper inquiry, it still would have admitted the evidence. Id.

Here, any error was harmless. In its pretrial hearing, the trial court articulated that it needed to find that the evidence was relevant and that the probative value of the evidence was not outweighed by its prejudicial effect. Its subsequent ruling suggests that the trial court considered the elements and found that they were met. Further, it is apparent from the record that the trial court reached the correct conclusion.

Reasonable fear is an essential element of harassment. RCW 9A.46.020(1)(b). Thus, evidence of a history of domestic violence is admissible to establish the victim's state of mind. State v. Johnson, 172 Wn. App. 112, 120-24, 289 P.3d 662 (2012). It is also admissible to prove the aggravating factors concerning domestic violence. Cason's testimony revealed not only a history of domestic violence, but also a pattern of threats that were then carried out. That goes directly to whether Cason had reason to

15

believe Valentine's threat. Further, at the pretrial hearing Valentine did not argue that the prior incidents did not happen. In fact, Cason's testimony that Valentine had strangled his ex-wife was corroborated by the fact that he was convicted of assault by strangulation as a result of that incident. ER 404(b) evidence is inherently prejudicial. But, in this case the evidence was highly probative, and was not unduly prejudicial. The trial court did not abuse its discretion in admitting the evidence.

Valentine also argues that the trial court should have bifurcated consideration of the aggravating factors from trial. The basis for his argument is that if evidence of prior domestic abuse was not admissible to prove the charged crime, then it may have been appropriate to separate the aggravating factors to avoid undue prejudice. But, bifurcation is inappropriate when the evidence supporting the aggravating factors is otherwise admissible at trial. RCW 9.94A.537(4). Here, the evidence was relevant to the felony harassment charge and bifurcation was unnecessary.

We remand for the trial court to vacate Valentine's fourth degree assault conviction, and otherwise affirm.

_____, J.

WE CONCUR:

_____, C.J.          _____, J.