IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38688-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MITCHELL EUGENE CRANE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — At the conclusion of a jury trial, Mitchell Crane was convicted of two counts of unlawful possession of a firearm. He appeals one of the two convictions, arguing the State failed to prove he had dominion and control over the firearm and that he knowingly possessed the firearm. Mr. Crane also challenges the trial court's calculation of his offender score. Specifically, Mr. Crane asserts his 2015 convictions for second degree assault and felony harassment constitute the same criminal conduct, as do his recent convictions for possession of an unlawful firearm and unlawful possession of a firearm. We affirm the unlawful possession of a firearm conviction and remand for the trial court to resentence Mr. Crane under a corrected offender score.

No. 38688-1-III
*State v. Crane*

## BACKGROUND

Mr. Crane lived in rural Finley, Washington. Mr. Crane was prohibited from possessing firearms due to a previous conviction for a "serious offense." Rep. of Proc.[1] (RP) at 263; RCW 9.41.040. In July 2021, Mr. Crane was dating his neighbor, Sonja Rogers. Although Mr. Crane's home was one driveway over from Ms. Rogers' home, he had been residing with her for a few months.

In the early hours of July 20, 2021, police were called to Mr. Crane's property due to a disturbance involving Mr. Crane allegedly discharging a firearm in Ms. Rogers' direction. Law enforcement officers responded, searched Mr. Crane's home, and discovered a 9mm handgun in the bathroom off his bedroom. Officers obtained a warrant to search Ms. Rogers' home for "other possibly affiliated or involved firearms." RP at 214. During that search, a loaded Mossberg .12-gauge shotgun was discovered next to the bed Ms. Rogers and Mr. Crane shared. The shotgun was found near an envelope labeled "Mitch." Ex. 15. Also found in Ms. Rogers' residence was a 9mm handgun case that bore a serial number identical to that found on the handgun discovered in Mr. Crane's home. Mr. Crane was charged with second degree assault and two counts of unlawful possession of a firearm.

---

[1] Unless otherwise noted, "RP" refers to the consecutively paginated verbatim report of proceedings of a three-day trial beginning October 25, 2021.

A jury trial was held in October 2021. Benton County Sheriff's Deputy Bruce Surplus testified he photographed the shotgun found in Ms. Rogers' bedroom as well as the envelope labeled "Mitch" at the end of the bed, near the shotgun. RP at 219, 239-40.

Ms. Rogers testified that Mr. Crane lived one driveway over from her but that he was living with her on the date of the incident and had been for a few months. She testified that she "thought she saw [a gun]" on Mr. Crane's side of the bed and that "[i]t was long enough for me to barely see the tip of it over the end—edge of the bed. His side of the bed I didn't need to go to." RP at 160. Ms. Rogers also testified that she only owned one gun, "a .38 special." RP at 159. She stated she had hunted in the past, but had not hunted since sometime before 1995. She also testified she cared about Mr. Crane and delayed calling the police initially after he fired shots at her because she "didn't want to get him in trouble." RP at 158.

Mr. Crane's son, Andrew Crane,[2] claimed ownership of the shotgun and testified that he had loaned it to Ms. Rogers so she could "go bird hunting." RP at 275. Andrew also testified that the gun was unloaded when he loaned it to Ms. Rogers.

On October 27, 2021, a jury acquitted Mr. Crane of second degree assault but found him guilty of both counts of unlawful possession of a firearm. Two days later, on October 29, a second jury found Mr. Crane guilty of 29 counts of unlawful possession of

---

[2] Andrew Crane is referred to by his first name for clarity.

3

a firearm, one count of possession of an unlawful firearm, and one count of witness intimidation. These additional convictions arose from a Department of Fish and Wildlife raid of Mr. Crane's property due to poaching allegations. *See State v. Crane*, No. 38687-2-III (argued Mar. 4, 2024). During the search, officers found a multitude of guns in both Mr. Crane's home and a shop on his property. One of the firearms found was a short-barrel shotgun.

A joint sentencing was held on both cases on January 5, 2022. At sentencing, the parties agreed that all of Mr. Crane's unlawful possession of a firearm convictions for the guns found in his home were the same criminal conduct and therefore counted as a single point in Mr. Crane's offender score. Likewise, the parties agreed the guns found in the shop were the same criminal conduct and counted as 1 point in Mr. Crane's offender score.

The parties disagreed about whether Mr. Crane's conviction for possession of an unlawful firearm and his conviction for unlawful possession of a firearm, both relating to the short-barrel shotgun, were the same criminal conduct. The State argued that the two offenses had different criminal intent and were therefore not the same criminal conduct.

The court accepted the parties' agreement that the unlawful possession of a firearm convictions for the guns found in the home were the same criminal conduct and that the firearms found in the shop were the same criminal conduct. However, the court found that the convictions for unlawful possession of a firearm and possession of an

4

unlawful firearm were not the same criminal conduct and, for purposes of calculating Mr. Crane's offender score, counted the convictions separately.

The State did not submit the judgment and sentence for Mr. Crane's convictions from 2015 for second degree assault and felony harassment, but the court counted each conviction as a separate point in Mr. Crane's offender score. The court sentenced Mr. Crane pursuant to an offender score of 7. Mr. Crane appealed.

After Mr. Crane's opening brief was filed with this court, we granted the State's motion to supplement the record pursuant to RAP 9.11. Comm'r's Ruling, *State v. Crane*, No. 38688-1-III (Wash. Ct. App. Apr. 6, 2023) (on file with court). The superior court was ordered to take additional evidence regarding Mr. Crane's 2015 convictions and decide whether they constituted the same criminal conduct. *Id.* at 8.

Before the trial court, the State submitted Mr. Crane's 2015 statement of defendant on plea of guilty and his judgment and sentence for the assault and harassment convictions. The State conceded that "it would be a mistake to say that [Mr. Crane's 2015 convictions are] not . . . the same criminal conduct." RP (July 18, 2023) at 18. However, the State contended Mr. Crane's argument that the two convictions constituted the same criminal conduct was untimely as his convictions for those crimes were over a year old.

The trial court agreed that Mr. Crane's 2015 convictions involved the same criminal conduct under RCW 9.94A.589(1)(a). However, the trial court elected to "defer

5

to the Court of Appeals" on whether Mr. Crane should be allowed to raise "a collateral attack . . . at this point." Clerk's Papers (CP) at 70. Thus, the court declined to alter Mr. Crane's offender score.

ANALYSIS

SUFFICIENCY OF EVIDENCE

Mr. Crane argues there was insufficient evidence to support a conviction for the unlawful possession of a firearm charge related to the shotgun found in Ms. Rogers' house. We disagree.

The sufficiency of the evidence is a question of law we review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn from it." *State v. DeVries*, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

The due process clause of the Fourteenth Amendment to the United States Constitution requires the State prove every element of an alleged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368

6

(1970). If, at trial, the State fails to present sufficient evidence to support the elements of the crime, double jeopardy prohibits a retrial. *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). The double jeopardy clause of the Fifth Amendment does not afford the State a second opportunity to supply evidence in a second trial that it failed to muster in the first. *Id*.

A person is guilty of unlawful possession of a firearm in the first degree if the person owns, has in his possession, or has in his control, any firearm after being previously convicted of any serious offense. RCW 9.41.040(1)(a). Possession may be actual or constructive. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994).

Mr. Crane argues the State did not present evidence that he possessed the firearm. Actual possession is established when "[a] person actually possesses something that is in his or her physical custody." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). On the other hand, a person "constructively possesses something that is not in his or her physical custody but is still within his or her 'dominion and control.'" *Id.* "This control need not be exclusive, but the State must show more than mere proximity." *State v. Raleigh*, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010).

Here, the State presented sufficient evidence to establish that Mr. Crane had dominion and control over the premises where the shotgun was located. The State also presented sufficient evidence to show Mr. Crane was in constructive possession of the shotgun. The evidence revealed that the Mossberg .12-gauge shotgun was found near an

envelope labeled "Mitch," a derivative of Mr. Crane's first name. Ex. 15. Also located in Ms. Rogers' home was other property belonging to Mr. Crane, a 9mm handgun case that bore the same serial number as the serial number on the 9mm handgun found in Mr. Crane's home. Further, Ms. Rogers testified that Mr. Crane was living with her on the day the shotgun was found by the police. She also testified that she "thought she saw [a gun]" on Mr. Crane's side of the bed and that "it was long enough for me to barely see the tip of it over the end—edge of the bed. His side of the bed I didn't need to go to." RP at 160. Ms. Rogers denied owning the shotgun found on Mr. Crane's side of the bed. She also testified that she did not call the police immediately upon seeing Mr. Crane fire shots outside the house because she "didn't want to get him in trouble" and that she does "care about [h]im." RP at 158.

Though Mr. Crane's son claimed he owned the shotgun and had previously loaned it to Ms. Rogers, his testimony could have been deemed by the jury to not be credible. Andrew testified he loaned the shotgun to Ms. Rogers "[be]cause she told me she wanted to go bird hunting." RP at 274-75. However, Ms. Rogers testified she had not hunted since before at least 1995 and never mentioned the shotgun being loaned to her. Andrew also testified that he loaned the shotgun to Ms. Rogers unloaded; however, the shotgun was loaded when it was found by police. Because Ms. Rogers testified she was only marginally aware of the shotgun, the jury could have inferred that Mr. Crane was the one

8

who loaded it, or that Andrew was untruthful when he testified about it being unloaded when loaned to her.

In viewing the evidence in the light most favorable to the State, as well as resolving all inferences that can reasonably be drawn from the evidence in favor of the State, a rational trier of fact could have found Mr. Crane guilty of this charge beyond a reasonable doubt. A reasonable fact finder could have concluded that Mr. Crane constructively possessed the firearm.

SAME CRIMINAL CONDUCT (POSSESSION OF AN UNLAWFUL FIREARM AND UNLAWFUL POSSESSION OF A FIREARM)

Mr. Crane argues that his convictions for unlawful possession of a firearm and possession of an unlawful firearm, from *State v. Crane*, No. 38687-2-III, encompassed the same criminal conduct and should have been counted as one point. We disagree.

Determinations of same criminal conduct are reviewed for abuse of discretion or misapplication of the law. *State v. Aldana Graciano*, 176 Wn.2d 531, 536-37, 295 P.3d 219 (2013). Because a finding of "same criminal conduct" favors Mr. Crane, he has the burden to prove the possession of the unlawful firearm and the unlawful possession of a firearm were the same criminal conduct. *Id.* at 539.

A determination of "same criminal conduct" at sentencing alters the offender score that is calculated by adding up the number of points for each prior offense.

RCW 9.94A.525(5)(a)(i). For purposes of an offender score calculation, current offenses are treated as prior convictions. RCW 9.94A.589(1)(a).

For sentencing purposes, if a court finds that "some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." *Id*. For multiple crimes to be treated as the "same criminal conduct," the crimes must have (1) been committed at the same time and place, (2) involved the same victim, and (3) involved the same objective criminal intent. *Id*.

Here, the trial court found that Mr. Crane's convictions for unlawful possession of a firearm and possession of an unlawful firearm were not the same criminal conduct. Consequently, the trial court added 2 points to Mr. Crane's offender score, 1 point for each of the two convictions.

In *State v. Hatt*, Division One of this court held that Mr. Hatt's convictions for unlawful possession of a firearm and possession of an unlawful firearm had the same objective intent—"to possess the firearm." 11 Wn. App. 2d 113, 143, 452 P.3d 577 (2019). Thus, the two offenses encompassed the same criminal conduct. *Id.* In doing so, the court analyzed *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1988), which "directed courts to 'focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next'" for purposes of analyzing the third factor of the same criminal conduct analysis. *Hatt*, 11 Wn. App. 2d at 142. The *Hatt* court recognized that the Supreme Court in *Dunaway* "did not interpret objective

criminal intent to be equivalent to statutory intent, stating that 'counts with identical mental elements, if committed for different purposes, would not be considered the same criminal conduct.'" *Id.* at 143 (internal quotation marks omitted) (quoting *Dunaway*, 109 Wn.2d at 215).

However, the court in *Hatt* viewed *State v. Chenoweth*, 185 Wn.2d 218, 370 P.3d 6 (2016), as departing from *Dunaway*'s analysis. 11 Wn. App. 2d at 143. The *Hatt* court recognized that in *Chenoweth* "the court compared the statutory criminal intent requirements of [rape of a child and incest] to determine that '[t]he intent to have sex with someone related to you differs from the intent to have sex with a child.'" *Id.* (alteration in original) (quoting *Chenoweth*, 185 Wn.2d at 223). The court in *Hatt* nevertheless believed the *Dunaway* framework was applicable. *Id.*

More recently, in *State v. Westwood*, the Supreme Court explained that *Chenoweth* and *Dunaway* are "not inconsistent and neither overrules the other." 2 Wn.3d 157, 166, 534 P.3d 1162 (2023). The court reiterated that "[t]he statutory intent is relevant in determining whether the objective intent prong is satisfied. Looking to any other source of intent has the potential to lean too closely to the subjective analysis that we have always rejected." *Id.* at 167. The court further clarified that "when same criminal intent is satisfied, in cases where we determined the crimes did encompass the same criminal conduct, there was a connection in the statutory definitions, with the statutory intent element of the crimes being either identical or very similar." *Id.*

11

Here, to convict Mr. Crane of possession of an unlawful firearm, the State had to prove Mr. Crane "knowingly possessed a short-barreled shotgun" and that Mr. Crane "had knowledge of the characteristics that make the gun unlawful." *State v. Crane*, No. 38687-2-III; CP at 34; RCW 9.41.190(1). On the other hand, to prove Mr. Crane unlawfully possessed the short-barrel shotgun, the State only had to prove Mr. Crane "knowingly owned a firearm or knowingly had a firearm in his possession" having been previously "convicted of a serious offense." CP at 38; RCW 9.91.040(1)(a).

We agree with the holding in *Hatt* that the overarching intent of both crimes is "to possess the firearm." 11 Wn. App. 2d at 143. However, that does not conclude our analysis. "If the objective intent for the offenses were the same or similar, courts can then look at whether the crimes furthered each other and were part of the same scheme or plan." *Westwood*, 2 Wn.3d at 168.

The objective intent of the crime of unlawful possession of a firearm is simply to possess a firearm. Possession of an unlawful firearm has a different criminal intent—to possess a firearm more dangerous and easier to conceal than a legal firearm. Consequently, the two crimes do not have the same objective criminal intent and are not the same criminal conduct.

The trial court did not abuse its discretion or misapply the law in finding that the unlawful possession of a firearm and possession of an unlawful firearm were not the same criminal conduct.

SAME CRIMINAL CONDUCT (2015 ASSAULT AND HARASSMENT)

Mr. Crane argues, and the State concedes, that his 2015 convictions for assault and harassment constituted the same criminal conduct. We accept the agreement and remand for resentencing with a corrected offender score.

Below, the State recognized that "it would be a mistake to say that [Mr. Crane's 2015 convictions are] not . . . the same criminal conduct." RP (July 18, 2023) at 18. However, the State contended that Mr. Crane's argument that the two convictions constituted the same criminal conduct was untimely as his convictions were over a year old.

The trial court made "a finding that I'm held to the standard of the statement on a plea of guilty on Case Number 15-1-00192-06" and attributed 1 point for each conviction toward Mr. Crane's offender score rather than counting both as a single point. *Id.* at 33. The trial court, in its findings, recognized that the crimes had the same victim, occurred at the same time and place, and had the same objective criminal intent. The court concluded the crimes involved the same criminal conduct. However, the trial court declined to count them as 1 point and instead elected to "defer to the Court of Appeals the issue of whether the defendant should be allowed to raise a collateral attack on cause number 15-1-00192-6 at this point." CP at 70. The two offenses should have been counted as 1 point.

RCW 9.94A.525 reads:

13

(5)(a) In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:

(i) Prior offenses which were found, under RCW 9.94A.589(1)(a), to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. *The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently or prior juvenile offenses for which sentences were served consecutively, whether those offenses shall be counted as one offense or as separate offenses using the "same criminal conduct" analysis found in RCW 9.94A.589(1)(a), and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used.* The current sentencing court may presume that such other prior offenses were not the same criminal conduct from sentences imposed on separate dates, or in separate counties or jurisdictions, or in separate complaints, indictments, or informations.

(Emphasis added.) Thus, the current sentencing court must make its own determination of whether prior offenses constitute the same criminal conduct. *State v. Johnson*, 180 Wn. App. 92, 101, 320 P.3d 197 (2014). The fact that Mr. Crane's prior 2015 convictions were over a year old has no bearing on the analysis.

The court correctly concluded that Mr. Crane's two 2015 convictions were the same criminal conduct and it should have therefore counted them as one point. Remand for resentencing is necessary.

## CONCLUSION

We affirm Mr. Crane's conviction for unlawfully possessing the Mossberg .12-gauge short-barrel shotgun, affirm the trial court's finding that possession of an unlawful firearm conviction and the unlawful possession of a firearm conviction are not the same

criminal conduct, and, based on Mr. Crane's 2015 convictions encompassing the same criminal conduct, remand for resentencing with an offender score of 6.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:


_____
Lawrence-Berrey, C.J.


_____
Fearing, J.