# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>VENIAMIN GEORGE RUSEV,<br><br>                             Petitioner. | No. 52389-2-II<br><br>UNPUBLISHED OPINION |

LEE, J. — Veniamin G. Rusev timely seeks relief from personal restraint imposed following his convictions for first degree assault and two counts of first degree robbery. The first degree assault involved Ihor Onishchuk and the first degree robberies involved Ihor[1] and Dmytro Onishchuk. Rusev alleges (1) the trial court erred in not instructing the jury on self-defense and defense counsel provided ineffective assistance of counsel for not proposing a self-defense jury instruction; (2) prosecutorial misconduct based on the prosecutor's closing remarks; (3) the first degree assault and first degree robbery convictions involving Ihor are the same criminal conduct and defense counsel provided ineffective assistance of counsel for not arguing this to the trial court; (4) ineffective assistance of counsel based on counsel's failure to request an exceptional sentence below the standard range; and (5) the first degree assault and first degree robbery convictions involving Ihor violate double jeopardy. We deny Rusev's petition.

---

[1] For ease of reading, the victims, who share the same last name will be referred to by their first names, Ihor and Dmytro. We intend no disrespect.

## FACTS[2]

Ihor sold a Mercedes to his cousin, Oleg Mikhalchuk. Mikhalchuk told Rusev about some issues he had with the Mercedes not working properly. Rusev said that he did not like people who cheat other people.

Vitali Alesik, a close friend of Ihor and Dmytro, also knew Rusev. Alesik loaned Rusev his Volvo to drive for a few months while Rusev worked on it.

On February 23, 2014, Alesik called Ihor and Dmytro, and asked them to pick up his Volvo from Rusev. The brothers planned to go together, so Ihor could drive his own car and Dmytro could drive the Volvo to Alesik. Alesik told Rusev over the phone that Ihor and Dmytro would pick up the car, and reminded Rusev that he had previously met Ihor.

Before the brothers went to pick up the Volvo, Rusev told his friend, Vossler Blesch, that he did not like that Ihor sold Mikhalchuk a broken car. Rusev told Blesch that he wanted to rob the brothers and scare them because they cheated their own family. Rusev said he did not trust the brothers and asked Blesch to stay. Blesch carried a firearm in his waistband, and Rusev told Blesch to reveal it when the brothers arrived so they would see it and be intimidated.

When the brothers arrived at Rusev's, they drove into the alleyway behind his garage. Rusev waited for them, standing in the doorway to the garage.

When Dmytro entered the garage, he saw Blesch with a gun in his waistband. After Ihor entered the garage, Rusev closed and locked the door. Within seconds, Blesch pulled the gun out of his waistband and pointed it at the brothers.

---

[2] The following facts rely in part on the facts set forth in this court's opinion in *State v. Rusev*, No. 47762-9-II (Wash. Ct. App. Apr. 18, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/477629.pdf, *review denied*, 189 Wn.2d 1005 (2017).

Ihor and Dmytro stood approximately five to seven feet away from Blesch and Rusev. The brothers spoke in Russian with Rusev. Rusev spoke aggressively and cursed. Blesch did not understand Russian and could not follow the conversation.

Rusev walked back and forth in front of the brothers. Based on instruction from Rusev, Blesch ejected a bullet out of the chamber of the gun to intimidate the brothers. Rusev then kicked it out of the way.

Rusev demanded the brothers' wallets and cell phones, and Dmytro's watch. Ihor tried to talk to Rusev in a friendly manner, but Rusev told him to be quiet or he would kill them. Rusev gestured with his head to Blesch to come closer with the gun. Blesch moved closer to them and gestured with the gun for the brothers to hand the items over. The brothers obeyed.

Rusev took one wallet and put it on top of the Volvo and gave the other wallet to Blesch. Rusev then demanded the brothers take off their jackets and shoes. The brothers again obeyed. Rusev also demanded their car keys, and Ihor handed them to Rusev. Rusev handed the phones and keys to Blesch, and Blesch put them in his jacket pocket. Rusev finally ordered the brothers to take off their pants. Ihor refused.

Rusev then made a phone call. While he was on the phone, Ihor told Dmytro that they needed to "leave this place alive" and needed to get out of there "by any price." 5 Verbatim Report of Proceedings (VRP) (May, 26, 2015) at 397-98. When Rusev hung up the phone, he began to walk behind the brothers. Ihor then grabbed Rusev and held him. Dmytro grabbed Rusev from behind and tried to push the group towards the door to escape. While Dmytro was "bear hugging" Rusev, he never at any time "punch[ed]" Rusev or acted "aggressively." 5 VRP (May, 26, 2015) at 407. Rusev then cried out, "Voss, help me." 10 VRP (June 3, 2015) at 995. While Dmytro tried to open the door, Blesch fired the gun, striking and injuring Ihor. Ihor suffered a gunshot wound

to the neck, chest, and arm that caused a significant spinal cord injury, rendering him a partial quadriplegic.

Rusev seemed surprised that Blesch shot the gun, and he told Blesch to leave. Rusev told Dmytro that Blesch was not supposed to fire the gun; he was only supposed to scare them. Blesch turned himself in to the police shortly thereafter. Blesch claimed that he followed Rusev's lead throughout the incident. Blesch pled guilty to first degree assault and two counts of first degree robbery.

The State charged Rusev as an accomplice to first degree assault (Ihor) and two counts of first degree robbery (Ihor and Dmytro). The State also charged Rusev with firearm enhancements on each count.

The trial court did not instruct the jury on self-defense nor was a self-defense instruction requested.

During the prosecutor's closing remarks, she made the following statement without objection: "As [Dmytro] held his brother in his arms applying pressure to the gunshot wound, pleading with [Rusev] to call 911 for help, he was terrified that his brother wasn't going to make it." 17 VRP (June 15, 2015) at 1838. The prosecutor then stated, without objection:

> I submit to you that [Rusev's] account of what occurred when he spoke to the detectives completely minimized his involvement, completely minimized his actions, what he did in the robbery and assault of these two.
>
> . . . .
>
> I submit to you that [Blesch's] testimony, although difficult at times and back and forth at times, you look at what he told the detective and what he testified to and what he told you about the actions, yeah, frantic situation, but actively participated in it, actively participate in at the request of the defendant.

17 VRP (June 15, 2015) at 1846-47.

The prosecutor then stated, without objection:

4

Back to Ihor's and Dmytro's testimony, I submit to you that it was credible. There's an issue with Ihor. There's [sic] spots that he doesn't have a memory of. He doesn't have a memory of ever doing anything that was physically aggressive towards [Rusev] other than pushing him off to the side. I submit to you that it's not a matter of his lying to you or being deceptive to you or to the law enforcement when they came out to talk to him or to defense counsel and myself when we went to talk to him.

17 VRP (June 15, 2015) at 1848.

As to the first degree robbery charge, the prosecutor stated, without objection, "What's [Rusev's] intent? Standing there with the guy with the gun demanding and insisting on the items. I submit to you his intent is to commit the theft and it's to commit it with force." 17 VRP (June 15, 2015) at 1862.

The prosecutor also made the following statements, without objection:

I submit to you the State has proven beyond a reasonable doubt that the defendant acted with knowledge, that his actions of demanding, of grabbing, of handing, all of those actions support that we've proven beyond a reasonable doubt that he acted with knowledge to commit the crime of robbery.

17 VRP (June 15, 2015) at 1863-64.

I submit to you that the State has proven the defendant acted as an accomplice with [Blesch], and he acted with the general knowledge that his aiding and facilitating for the crime of robbery, which was then elevated to robbery in the first degree because of the firearm involved, and he acted with the general knowledge of aiding and facilitating the simple crime of assault.

17 VRP (June 15, 2015) at 1868-69.

In her rebuttal, the prosecutor stated, without objection, "I submit to you that they did plan an assault, and I went through several pieces of evidence and testimony that came out on why that assault was planned." 17 VRP (June 15, 2015) at 1915. Lastly, the prosecutor stated,

And I submit to you that based on [Rusev's] actions, his intentional deliberate actions, it was clear that he wanted to cause fear and intimidate Dmytro and Ihor. And it's clear that he acted with the intent to take their property and to do so with force with [Blesch] behind him.

5

17 VRP (June 15, 2015) at 1923.

During defense counsel's closing remarks, he argued that Rusev was not an accomplice to Ihor's assault because Rusev never intended for Blesch to "shoot [the gun]." 17 VRP (June 15, 2015) at 1903. Defense counsel then stated, "I'd submit to you this is an indication of, whether it was justifiable force or not, a fight that was ongoing." 17 VRP (June 15, 2015) at 1903. The prosecutor objected, stating, "This is not a self-defense case." *Id.* Defense counsel responded, "I'm not suggesting it is." *Id*.

The jury found Rusev guilty of first degree assault (Ihor) and two counts of first degree robbery (Ihor and Dmytro). By special verdict, the jury found Rusev, or the person with whom he acted as an accomplice, was armed with a firearm at the time of each of the three counts.

Rusev's standard sentence range was 129 to 171 months. The prosecutor requested a sentence at the top of the standard range. Defense counsel requested a sentence at the bottom of the standard range. The trial court sentenced Rusev to 155 months, the middle of the standard sentencing range, plus three 60-month firearm enhancements for a total sentence of 335 months.

Rusev appealed. We affirmed his convictions, but remanded for the sentencing court to strike a mandatory minimum sentence imposed on the assault charge. Rusev now challenges his convictions and sentence with this personal restraint petition (PRP).

## ANALYSIS

A.    PRP LEGAL PRINCIPLES

"Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011) (citing *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990)). To be entitled to relief on a PRP, a petitioner must

show (1) actual and substantial prejudice by a constitutional error, or (2) "a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013).

In reviewing a PRP, we have three available options: (1) deny the petition, (2) grant the petition, or (3) transfer the petition to the superior court for a reference hearing. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013); *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015). "Bald assertions and conclusory allegations" are inadequate to justify relief. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992).

B.      SELF-DEFENSE JURY INSTRUCTION

Rusev argues that the trial court failed to properly instruct the jury regarding self-defense on the assault charge and that defense counsel provided ineffective assistance by failing to propose a self-defense jury instruction. We disagree.

1.      Legal Principles

Jury instructions are generally sufficient where they are supported by substantial evidence, properly state the law, and allow the parties an opportunity to satisfactorily argue their theories of the case. *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). The adequacy of jury instructions is reviewed de novo. *Id.* A defendant is entitled to an instruction on his theory of the case if there is evidence to support that instruction. *State v. Werner*, 170 Wn.2d 333, 336, 241 P.3d 410 (2010).

Self-defense may be asserted as a complete defense to assault. *State v. Camara*, 113 Wn.2d 631, 639, 781 P.2d 483 (1989). To raise the claim of self-defense, a defendant must first offer credible evidence tending to prove self-defense. *State v. Walden*, 131 Wn.2d 469, 473-74, 932

P.2d 1237 (1997). The burden then shifts to the State to prove the absence of self-defense beyond a reasonable doubt. *Id.*

The use of force is lawful when a person reasonably believes he or she is about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against the person and when the force is not more than necessary. RCW 9A.16.020. A defendant who is the aggressor cannot invoke self-defense. *State v. George*, 161 Wn. App. 86, 96, 249 P.3d 202, *review denied*, 172 Wn.2d 1007 (2011).

2.      Sua Sponte Jury Instruction

Rusev first argues that the trial court erred in failing to give a self-defense jury instruction sua sponte. He argues that a self-defense jury instruction was needed to provide a "complete definition of assault" to the jury. PRP at 14. We disagree.

While a trial court must inform the jury of the elements of an offense and allow counsel to argue their theories of the case, the trial court is not required to instruct a jury in a more detailed fashion absent a request to do so. *State v. Marohl*, 151 Wn. App. 469, 477, 213 P.3d 49 (2009), *rev'd on other grounds*, 170 Wn.2d 691 (2010). Courts have noted that a defendant's right to present a full defense and to jury instructions on the defense theory of the case run in tandem with the defendant's constitutional right to control that defense. *See State v. Jones*, 99 Wn.2d 735, 740-41, 664 P.2d 1216 (1983) ("a defendant has a constitutional right to at least broadly control his own defense."); *State v. McSorley*, 128 Wn. App. 598, 604, 116 P.3d 431 (2005) (the court may not compel a defendant to raise an affirmative defense he has not advanced). Accordingly, courts may not force a defense on a criminal defendant where the defendant neither advances nor evidences a desire to raise such a defense.

Here, defense counsel specifically stated that Rusev was not advancing a self-defense theory.  Therefore, the trial court did not err in failing to give a self-defense jury instruction sua sponte.

3.      Ineffective Assistance of Counsel

Rusev next argues that he was denied effective assistance of counsel because defense counsel did not propose a self-defense jury instruction.  We disagree.

We review ineffective assistance of counsel claims de novo.  *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).  To prevail on an ineffective assistance of counsel claim, the defendant must show both that defense counsel's representation was deficient and the deficient representation prejudiced the defendant.  *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014).

Counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Id*. at 33.  We engage in a strong presumption that counsel's performance was reasonable.  *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).  A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'"  *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).  To establish prejudice, the defendant must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different."  *Kyllo*, 166 Wn.2d at 862.  A petitioner who presents a successful ineffective assistance of counsel claim necessarily establishes actual and substantial prejudice for purposes of collateral relief.  *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the petitioner must first show he or she was entitled to the instruction.

*State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013).

Here, Rusev did not like Ihor and Dmytro, and wanted to rob them. He asked Blesch to help by revealing Blesch's gun when the brothers arrived. When the brothers arrived, Rusev was waiting for them. Dmytro entered the garage and saw Blesch with a gun in his waistband. After Ihor entered the garage, Rusev closed and locked the door. Within seconds, Blesch pulled the gun out of his waistband and pointed it at the brothers. Rusev spoke aggressively and paced in front of the brothers. He then told Blesch to eject a bullet out of the chamber of the gun to intimidate the brothers.

Next, Rusev demanded the brothers' wallets and cell phones, and Dmytro's watch. Ihor tried to talk to Rusev in a friendly manner, but Rusev told him to be quiet or he would kill them. Rusev gestured with his head to Blesch to come closer with the gun. Blesch moved closer and gestured with the gun for the brothers to hand the items over. The brothers obeyed. Rusev then made a phone call. When he hung up, he began to walk behind the brothers. Ihor grabbed Rusev and held him. Dmytro joined in and tried to push the group towards the door to escape. While Dmytro was "bear hugging" Rusev, he never at any time tried to "punch" Rusev or acted "aggressively." 5 VRP (May, 26, 2015) at 407. Rusev cried out, "Voss, help me." 10 VRP (June 3, 2015) at 995. While Dmytro tried to open the door, Blesch fired the gun, striking and injuring Ihor.

Based on these facts, the defense theory was that Rusev was not an accomplice to the assault because he never intended for an assault to occur and he was shocked by Blesch's actions. (17 VRP 1885) A self-defense jury instruction would contradict the defense's theory. *See State v. Pottorff*, 138 Wn. App. 343, 348, 156 P.3d 955 (2007) (a defendant asserting self-defense is

ordinarily required to admit he or she committed an assault). Therefore, defense counsel's decision not to propose a self-defense jury instruction was tactical. Because there is a "'conceivable legitimate tactic explaining counsel's performance,'" Rusev cannot establish deficient performance to prove an ineffective assistance of counsel claim. *Grier*, 171 Wn.2d at 33 (quoting *Reichenbach*, 153 Wn.2d at 130).

Even assuming he establishes deficient performance, Rusev fails to show prejudice because he has not shown that he was entitled to a self-defense instruction. As set forth above, a defendant who is the aggressor cannot invoke self-defense. *George*, 161 Wn. App. at 96. Here, there is overwhelming evidence that Rusev was the first aggressor, making it unlikely that the trial court would have found Rusev was entitled to a self-defense instruction. Therefore, we conclude that Rusev fails to show he received ineffective assistance of counsel.

## C.    PROSECUTORIAL MISCONDUCT

Rusev next argues that the prosecutor committed misconduct during closing remarks by appealing to the passions of the jury and asserting her personal beliefs regarding the credibility of the witnesses. We disagree.

A defendant alleging prosecutorial misconduct must prove (1) the conduct was improper and (2) he or she was prejudiced. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). "[T]o prevail as a personal restraint petitioner on [a] prosecutorial misconduct claim, [the petitioner] must prove the alleged misconduct was either a constitutional error that resulted in actual and substantial prejudice or a fundamental defect that resulted in a complete miscarriage of justice." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). Additionally, because Rusev did not object to the misconduct at trial, "his claim is considered waived unless the misconduct is 'so flagrant and ill-intentioned that it caused an enduring and resulting prejudice

11

that could not have been neutralized by a curative instruction.'" *Id.* (quoting *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 143, 385 P.3d 135 (2016)).

We look at each statement in the context of the entire record and trial circumstances. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). A prosecutor has "wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." *Id*. at 448. However, a prosecutor has a duty to seek verdicts free from appeals to the jury's passions or prejudices. *State v. Perez-Mejia*, 134 Wn. App. 907, 915, 143 P.3d 838 (2006).

During the prosecutor's closing remarks, she stated, without objection, "As [Dmytro] held his brother in his arms applying pressure to the gunshot wound, pleading with [Rusev] to call 911 for help, he was terrified that his brother wasn't going to make it." 17 VRP (June 15, 2015) at 1838. Rusev argues this was an improper appeal to the jury's passions, but fails to explain how this statement is so flagrant and ill intentioned that it caused an enduring and resulting prejudice that could not have been neutralized by a curative instruction. This statement was based on the evidence, went to the events after Blesch shot Ihor, and are not so flagrant and ill intentioned that it caused an enduring and resulting prejudice that could not have been neutralized by a curative instruction. Accordingly, we considers Rusev's contention waived. *Lui*, 188 Wn.2d at 539.

The prosecutor also made several remarks proceeded by the statement "I submit to you." 17 VRP (June 15, 2015) at 1846-48, 1862-64, 1868, 1915, 1923. Rusev argues that the prosecutor's repeated use of the words, "I submit to you" was a "first person endorsement of the credibility of her witnesses." PRP at 28-29. However, a prosecutor may freely comment on witness credibility based on the evidence. *Thorgerson*, 172 Wn.2d at 448. All of the prosecutor's statements are based on the evidence.

Even assuming they were improper, Rusev does not show how these statements were so flagrant and ill intentioned that it caused an enduring and resulting prejudice that could not have been neutralized by a curative instruction. Accordingly, we consider Rusev's objection to the above statements as waived. *Lui*, 188 Wn.2d at 539.

D.      SAME CRIMINAL CONDUCT

1.      Trial Court Challenge

Rusev next argues that the trial court erred when it failed to consider his first degree assault and first degree robbery convictions involving Ihor as the same criminal conduct for the purpose of calculating his offender score. We disagree.

A trial court calculates a defendant's offender score for sentencing purposes by counting current offenses and past convictions. RCW 9.94A.589(1)(a). The offender score for a given current offense includes all other current offenses unless the trial court finds "that some or all of the current offenses encompass the same criminal conduct." *Id*. Offenses constitute the same criminal conduct if they "require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id*. A defendant has the burden to "establish [what] crimes constitute the same criminal conduct." *State v. Aldana Graciano*, 176 Wn.2d 531, 539, 295 P.3d 219 (2013).

"Deciding whether crimes involve the same time, place, and victim often involves determinations of fact," and it is well settled that "a court's determination of same criminal conduct will not be disturbed unless the sentencing court abuses its discretion or misapplies the law." *State v. Chenoweth*, 185 Wn.2d 218, 220-21, 370 P.3d 6 (2016). For issues that involve discretion, a failure to raise the issue in the trial court operates as a waiver. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). A trial court is not required to undertake a same criminal

conduct analysis sua sponte. *State v. Nitsch*, 100 Wn. App. 512, 524-25, 997 P.2d 1000, *review denied*, 141 Wn.2d 1030 (2000).

Because the question of whether Rusev's convictions were based on the same criminal conduct presents a factual determination and involves the exercise of discretion, it may not be raised for the first time on appeal. *Nitsch*, 100 Wn. App. at 523; RAP 2.5(a). Accordingly, we will not entertain Rusev's unpreserved challenge to the trial court's calculation of his offender score.

2. Ineffective Assistance of Counsel Challenge

Alternatively, Rusev argues that his defense counsel's failure to request a finding of same criminal conduct constituted ineffective assistance of counsel. We disagree.

a. Legal principles

Ineffective assistance of counsel is a manifest error affecting a constitutional right and can be raised for the first time on appeal. *State v. Brown*, 159 Wn. App. 1, 17, 248 P.3d 518 (2010), *review denied*, 171 Wn.2d 1015 (2011). As discussed above, to prevail on an ineffective assistance of counsel claim, the defendant must show both that defense counsel's representation was deficient and the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. We need "not address both prongs of the ineffective assistance test if the defendant's showing on one prong is insufficient." *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

Rusev relies in part on *State v. Phuong*, 174 Wn. App. 494, 547-48, 299 P.3d 37 (2013), *review denied*, 182 Wn.2d 1022 (2015), which held that ineffective assistance of counsel is shown when a defendant demonstrates a reasonable possibility that a sentencing court would have found that the offenses constituted the same criminal conduct if his or her lawyer had so argued. In

*Phuong*, the court held that the offenses at issue, attempted second degree rape and unlawful imprisonment, entailed the same criminal conduct. At issue in *Phuong* was whether the two offenses had the same criminal intent. The court held that because the "unlawful imprisonment furthered the offense of attempted rape in the second degree," defense counsel's failure to argue same criminal conduct at sentencing constituted deficient performance. 174 Wn. App. at 548.

Our Supreme Court has held that determining whether crimes involved the same criminal intent under RCW 9.94A.589(1)(a) requires examining the statutory criminal intent required for each crime. *Chenoweth*, 185 Wn.2d at 223. If an otherwise single act comprises separate and distinct statutory criminal intents, it does not meet the statute's definition of "same criminal conduct." *Id*. In determining whether two crimes share the same criminal intent, the court focuses on whether the defendant's intent, viewed objectively, changed from one crime to the next and whether commission of one crime furthered the other. *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987).

Here, the parties agree the crimes involve the same place and victim, but they dispute whether the crimes occurred at the same time and with the same criminal intent. We focus on whether the crimes occurred with the same criminal intent because that issue is dispositive. *See Aldana Graciano*, 176 Wn.2d at 539 (the defendant has the burden of proving offenses occurred at the same time and same place, had the same victim, *and* have the same criminal intent; if the defendant does not meet his or her burden, the offenses do not encompass the same criminal conduct.)

b.      Criminal intent

A person is guilty of first degree robbery when he or she unlawfully takes personal property from another and is armed with a deadly weapon or displays what appears to be a firearm. RCW

9A.56.190; RCW 9A.56.200(1)(a)(i)-(ii). A person is guilty of first degree assault if he or she, with intent to inflict great bodily harm, assaults another with a firearm. RCW 9A.36.011(1)(a).

The intent required for first degree robbery is the intent to deprive the victim of property, while the intent required for first degree assault is the intent to inflict great bodily harm. RCW 9A.56.190, .200; RCW 9A.36.011(1). The two offense are not the same criminal conduct when the assault is an "afterthought" to the robbery. *State v. Freeman*, 118 Wn. App. 365, 378, 76 P.3d 732 (2003), *aff'd*, 153 Wn.2d 765 (2005).

Here, Rusev told Blesch he wanted to rob Ihor and Dmytro. He asked Blesch to reveal his firearm to intimidate them. After the brothers arrived, Rusev closed the door behind them, and Blesch pulled the gun out of his waistband and pointed it at the brothers. Rusev spoke aggressively, cursing and pacing in front of the brothers. Rusev then told Blesch to eject a bullet out of the chamber of the gun to intimidate the brothers. Next, Rusev demanded the brothers' wallets and cell phones, and Dmytro's watch. Rusev also demanded that the brothers take off their jackets and shoes, and that they give Rusev their phones and car keys. Rusev then made a phone call. After he got off the phone, the brothers grabbed Rusev and pushed toward the door to escape. Rusev then cried out, "Voss, help me." 10 VRP (June 3, 2015) at 995. While Dmytro tried to open the door, Blesch fired the gun, striking and injuring Ihor. Ihor suffered a gunshot wound to the neck, chest, and arm that caused a significant spinal cord injury, rendering him a partial quadriplegic.

In this case, neither crime furthered the commission of the other. The robbery occurred, Rusev made a phone call, Ihor and Dmytro tried to escape, and then the assault occurred. The assault was committed in an effort to help free Rusev from Ihor and Dmytro's hold on him. The assault did not further the ultimate goal of the robbery, which was completed before the assault.

*See Dunaway*, 109 Wn.2d at 217 (finding that murders committed after robberies completed did not constitute the same criminal conduct). Because the robbery was completed before the assault occurred, the first degree robbery and first degree assault do not share the same criminal intent.

Because Rusev's criminal intent changed from one offense to the other, the first degree robbery and first degree assault did not constitute the same criminal conduct. We conclude that Rusev fails to establish that his attorney's conduct fell below an objective standard of reasonableness because the trial court would have rejected a same criminal conduct argument. Thus, Rusev's ineffective assistance of counsel claim fails.

E.      INEFFECTIVE ASSISTANCE OF COUNSEL/SENTENCE BELOW STANDARD RANGE

Rusev next argues that he was denied effective assistance of counsel because defense counsel did not request a sentence below the standard sentencing range. We disagree.

As discussed above, to prevail on an ineffective assistance of counsel claim, the defendant must show both that defense counsel's representation was deficient and the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. We need "not address both prongs of the ineffective assistance test if the defendant's showing on one prong is insufficient." *Foster*, 140 Wn. App. at 273.

A trial court "may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1). Relying on *State v. McFarland*, 189 Wn.2d 47, 399 P.3d 1106 (2017), Rusev argues that defense counsel should have argued for a sentence below the standard sentencing range because his mandatory firearm enhancements created a clearly excessive sentence.

In *McFarland*, a jury found Cecily Zorada McFarland guilty of first degree burglary, 10 counts of theft of a firearm, and 3 counts of unlawful possession of a firearm. 189 Wn.2d at 49.

17

The sentencing court imposed standard range sentences on each count and ordered that the firearm-related sentences be served concurrently as to the burglary sentence but consecutively as to each other. *Id.* This resulted in a total sentence of 237 months. *Id.* McFarland appealed, arguing that the sentencing court failed to recognize its discretion to impose an exceptional mitigated sentence by running the firearm-related sentences concurrently. Our Supreme Court agreed, holding that a sentencing court retains discretion to impose concurrent sentences "for firearm-related *convictions*" as part of an exceptional mitigated sentence if it finds that the presumptive concurrent sentences are clearly excessive under RCW 9.94A.535(1)(g). *McFarland*, 189 Wn.2d at 55.

Here, Rusev was not convicted of multiple firearm-related offenses. Rather, a jury found he was armed with a firearm during the commission of each of his three offenses; thus, Rusev was convicted on firearm *enhancements*. Under RCW 9.94A.533(3)(e), "all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements." Our Supreme Court has held that this statutory language deprives sentencing courts of the discretion to impose an exceptional sentence with regard to firearm enhancements. *State v. Brown*, 139 Wn.2d 20, 21, 29, 983 P.2d 608 (1999), *overruled in part by State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017) (relating to juveniles).

Rusev's standard sentence range was 129 to 171 months. The prosecutor requested a sentence at the top of the standard range. Defense counsel requested a sentence at the bottom of the standard range. The trial court sentenced Rusev to 155 months, the middle of the standard range, plus three 60-month firearm enhancements for a total sentence of 335 months. The consecutive firearm enhancements are mandatory. RCW 9.94A.533(3)(e). Based on the record, Rusev fails to show that defense counsel's conduct in not arguing for a mitigated exceptional

sentence downward based on the mandatory firearm enhancements amounted to deficient performance. Accordingly, Rusev fails to show he received ineffective assistance of counsel.

F.      DOUBLE JEOPARDY

Rusev lastly argues that his first degree robbery and first degree assault convictions involving Ihor violate double jeopardy. We disagree.

Double jeopardy and same criminal conduct analyses are distinct and separate inquiries. *Chenoweth*, 185 Wn.2d at 222 (citing *State v. French*, 157 Wn.2d 593, 611-12, 141 P.3d 54 (2006)). The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution prohibit the imposition of multiple punishments for a single offense. *French*, 157 Wn.2d at 612. "A 'defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law.'" *State v. Peña Fuentes*, 179 Wn.2d 808, 824, 318 P.3d 257 (2014) (quoting *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)). If the legislature authorized cumulative punishments for both crimes, then double jeopardy is not offended. *State v. Freeman*, 153 Wn.2d 765, 772, 108 P.3d 753 (2005).

In *Freeman*, our Supreme Court recognized that "[s]ometimes, there is sufficient evidence of legislative intent that we are confident concluding that the legislature intended to punish two offenses . . . separately *without more analysis*." 153 Wn.2d at 772 (citing *Calle*, 125 Wn.2d at 777-78) (emphasis added). The Supreme Court then concluded that "the legislature did intend to punish first degree assault and first degree robbery separately." *Freeman*, 153 Wn.2d at 779-80.

Here, because the legislature intended to punish first degree assault and first degree robbery separately, we conclude that Rusev's first degree assault and first degree robbery convictions do not violate double jeopardy.

CONCLUSION

Rusev does not meet the high standard necessary for us to disturb his judgment and sentence in this collateral challenge to his convictions. He does not show actual and substantial prejudice by a constitutional error, or a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. Accordingly, we deny Rusev's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Sutton, J.